*Inter Partes* Reexamination for U.S. Patent 7,553,672 B2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re *Inter Partes* Reexamination of: | ) |
| | ) |
| U.S. Patent No. 7,553,672 B2 | ) |
| | ) |
| Issued: June 30, 2009 | ) Confirmation Nos.: 8066 |
| | ) |
| Inventors:   Steven A. Bogen | ) Group Art Unit: 3993 |
| Herbert H. Loeffler | ) |
| John A. Purbrick | ) Examiner: DAWSON, Glenn K. |
| | ) |
| Control No.: 95/001,671 | ) |
| | ) |
| Filed: May 14, 2007 | ) |
| | ) |
| Title: Random Access Slide Stainer With | ) |
| Independent Slide Heating Regulation | ) |
| | ) |

**Certificate of EFS-Web Transmission**
I hereby certify that this correspondence is being transmitted via the U.S. Patent and Trademark Office electronic filing system (EFS-Web) to the USPTO on August 19, 2015

Signed:   John M. Griem, Jr.

Director of the United States Patent and Trademark Office
Office of the General Counsel
10B20
Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

**Mail Stop 8**
Attn: Office of the Solicitor
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## NOTICE OF APPEAL TO THE COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT BY PATENT OWNER

SIR:

Pursuant to the provisions of 37 C.F.R. § 1.983, Patent Owner, Dako Denmark A/S

hereby provides Notice of Appeal to the United States Court of Appeals for the Federal Circuit

from the Decision on Appeal of the Patent Trial and Appeal Board dated August 25, 2014

Reexamination Control No.: 95/001,671
Patent No. 7,553,672 B2

("Decision on Appeal"), and from the Decision on Rehearing of the Patent Trial and Appeal

Board dated the July 1, 2015. See 35 U.S.C. § 141.

     A copy of the decisions appealed from are submitted herewith as Exhibit A.

     Without limitation, the primary issues on appeal are expected to be whether the Board, in

the Decision on Appeal, properly construed claim 2 of the patent at issue, affirmed the

Examiner's determinations that claim 2 of the patent at issue was anticipated by Tseung and

obvious in view of Tseung, and whether the Board properly denied those portions of Patent

Owner's request for rehearing of the Decision on Appeal, deciding that the Decision on Appeal

did not set forth a new ground of rejection, that the Board did not err in its construction of claim

2 of the patent at issue, and that claim 2 of the patent at issue was anticipated and obvious in

view of Tseung.

     Three copies of this Notice of Appeal together with the appropriate fee (Court of Appeals

for the Federal Circuit, Miscellaneous Fee Schedule effective December 1, 2013) are being filed

in the United States Court of Appeals for the Federal Circuit.

     A copy of this Notice is being filed with the Patent Trial and Appeal Board electronically.

Date: August 19, 2015                Respectfully submitted,

**Carter Ledyard & Milburn LLP**
2 Wall Street                          John M. Griem, Jr.
New York, New York 10005          Reg. No. 40,005
Telephone: 212.732.3200            Attorney for Patent Owner
Facsimile: 212.732.3232             Dako Denmark A/S
CUSTOMER NO.: 63973           Customer No. 63973

7669818.1

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re *Inter Partes* Reexamination of: | ) | |
| | ) | |
| U.S. Patent No. 7,553,672 B2 | ) | |
| | ) | |
| Issued: June 30, 2009 | ) | Confirmation Nos.: 8066 |
| | ) | |
| Inventors:    Steven A. Bogen | ) | Group Art Unit: 3993 |
|                   Herbert H. Loeffler | ) | |
|                   John A. Purbrick | ) | Examiner: DAWSON, Glenn K. |
| | ) | |
| Control No.: 95/001,671 | ) | |
| | ) | |
| Filed: May 14, 2007 | ) | |
| | ) | |
| Title: Random Access Slide Stainer With | ) | |
|          Independent Slide Heating Regulation | ) | |
| | ) | |

Director of the United States Patent and Trademark Office
Office of the General Counsel
10B20
Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

**Mail Stop 8**
Attn: Office of the Solicitor
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22319-1450

## CERTIFICATE OF SERVICE

It is certified that a copy of the foregoing Notice of Appeal to The U.S. Court of Appeals

for the Federal Circuit and a copy of the Patent Trial and Appeal Board decisions being appealed

(Appeal 2014-002692) has been transmitted this 19th day of August, 2015, to the Director of the

USPTO via Express Mail, to the PTAB via EFS, to the CAFC via EFS, and served via First

Class Mail to the following:

7668439.1

| HAMILTON, BROOK, SMITH & REYNOLDS, P.C.<br>530 Virginia Road<br>P.O. Box 9133<br>Concord, MA 01742-9133 | K. Shannon Mrksich<br>DANAHER LEGAL<br>1500 Mittel Blvd.<br>Wood Dale, IL 60191 |
|---|---|
| Andreas Danckers<br>LEICA BIOSYSTEMS RICHMOND, INC.<br>P.O. Box 528<br>Richard, IL 60071 | |

Dated: August 19, 2015

Respectfully submitted,
CARTER LEDYARD & MILBURN LLP

Attorneys for Patent Owner

By:  /John M. Griem, Jr./
John M. Griem, Jr.
Two Wall Street
New York, New York 10005
Tel: (212) 732-3200
Fax: (212) 732-3232

7668439.1

Reexamination Control No.: 95/001,671
Patent No. 7,553,672 B2

# EXHIBIT A

7669818.1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,671 | 06/29/2011 | 7,553,672 | 1205100-00731US2 | 8066 |

21005      7590      07/01/2015
HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 VIRGINIA ROAD
P.O. BOX 9133
CONCORD, MA 01742-9133

| EXAMINER |
|---|
| DAWSON, GLENN K |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/01/2015 | PAPER |

Please find below and/or attached an Office communication concerning this application or proceeding.

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

LEICA BIOSYSTEMS MELBOURNE PARTY LTD.
Requester and Respondent

v.

DAKO DENMARK A/S
Patent Owner and Appellant

_____

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2
Technology Center 3900

_____

Before MARK NAGUMO, RICHARD M. LEBOVITZ, and JEFFREY B.
ROBERTSON, *Administrative Patent Judges.*

LEBOVITZ, *Administrative Patent Judge.*

DECISION ON REHEARING

    Patent Owner, who is the Appellant in this appeal, requests rehearing under
37 C.F.R. § 41.79 ("Req. Reh'g") of the Decision on Appeal dated August 25,
2014 (the "Decision" or "Dec. Appeal").  Requester and Respondent filed
Comments on the Request on October 24, 2014.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Patent Owner contends new grounds of rejection were not designated as such and that the Decision erred with respect to rejections of claim 2 over Tseung.

1. Was a new ground of rejection set forth in the Decision on Appeal?

Patent Owner contends that the Board upheld the Examiner's obviousness rejection of Tseung on grounds that had not been advanced by the Examiner. Req. Reh'g 1.

A. One of the issues in the appeal is the obviousness of making a slide staining apparatus with heating blocks which hold only a single slide, where each block can be heated to a different temperature. In their Appeal Brief, Patent Owner had argued:

> [M]odifying a stainer with four heating blocks each holding ten slides to forty individual slide heaters is far more than an arbitrary design choice and would result in substantial increases in cost and complexity. For example, such a modification could require a ten-fold increase in the number of heating elements, supply wires, temperature sensing wires, power switching circuits, etc. Increasing the number of these elements by an order of magnitude also has an effect on reliability since there would be more parts subject to failure.

Patent Owner Appeal Br. 8.

The Board responded to this argument, which the Decision characterized as the "complexity argument," by stating that the "Examiner is not proposing to increase the number of slide supports, but to reduce the number so that each slide support (heat block) comprises only one slide support – without changing the wiring." Dec. Appeal 18. The Examiner in the Right of Appeal Notice ("RAN") had stated:

> Furthermore, even if Tseung failed to teach this limitation, the examiner contends that it would have been obvious to have provided

2

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> slide supports which could only support and individually heat one and
> only one slide, because the number of slides supportable by anyone
> slide support would be completely arbitrary. One could produce a
> slide support which could hold, support and individually heat 50
> slides, or two supports which could each hold, support and
> individually heat 25 slides, or 5 supports which could each hold,
> support and individually heat 10 slides each, or ... 50 slide supports
> which could each hold, support and individually heat only a single
> slide. <u>If someone only needed to routinely process 4 slides, for
> example, an apparatus having four different slide supports, each
> holding, supporting and individually heating only a single slide would
> suffice.</u> There is nothing inventive about altering or adjusting the
> number of slides any particular slide support could hold, support and
> individually heat.

RAN 15 (emphasis added).

Patent Owner contends that "the numerical reference to '4 slides' in the next
sentence (referring to a 'need[] to routinely process 4 slides') does not suggest an
association with the block of Tseung." Request 3.

We do not agree with Patent Owner's statement. In the same paragraph, and
in the immediately preceding sentence, the Examiner had specifically discussed
Tseung: "Furthermore, even if Tseung failed to teach this limitation, the examiner
contends that it would have been obvious to have provided slide supports which
could only support and individually heat one and only one slide, because the
number of slides supportable by anyone slide support would be completely
arbitrary." RAN 15. Indeed, the entire paragraph is a response to Patent Owner's
argument that there is no motivation to provide Tseung with individual slide
heating. *Id.* at 14. Consequently, the evidence of record does not support Patent
Owner's contention that a new grounds of rejection had been set forth in the
Decision on Appeal.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

B. Patent Owner also contends the Board's discussion of "copying" set forth a new ground of rejection. Req. Reh'g 4. Specifically, Patent Owner argues that the "Examiner found no evidence of copying. The Board reversed this determination, finding copying." *Id.*

Although our final conclusion was that copying of the features of the claimed invention had not been established by Patent Owner, several statements in the section titled "Copying" in the Decision on Appeal were imprecisely worded. As a consequence, we delete the entire copying section on pages 18-22 and replace it with the following section. (Underlining shows the material added to the discussion; the deleted text is shown as a cross-out.)

Copying

As evidence of nonobviousness, Patent Owner also contends that the claimed invention was copied. Appeal Br. 20. A declaration by Steven A.Bogen, a co-inventor of the '672 patent, was provided by Patent Owner as evidence. Declaration of Steven A. Bogen, M.D., Ph.D., dated November 15, 2011 ("Bogen Decl."). According to Patent Owner, a competitor, Ventana, gained access to a confidential business plan (Ex. D of Bogen Decl.) from CytoLogix, the original owner of the '672 patent, and used that plan to develop their own device. *Id.* The evidence of copying is derived from a talk given by Jack Schuler, Chairman of Ventana. Ex. C of Bogen Decl. In this speech, Mr. Schuler stated:

> So, a healthy company is one that is paranoid about competition. Let me give you an example of how this worked for us at Ventana. Two years ago, Ventana's only business was in the field of immuno histo chemistry. We have looked at a related field of special stains but determined that the pricing was too low. A small startup company in Boston called Cytologix had developed an instrument for special stains. They need additional funding to complete development and circulated financing memorandum that happened to cross my desk – this is when we first heard of this start-up. The document outlined why Ventana had underestimated this market, that customers were ready to pay a higher price for automation. One they got a foothold in this special stains market the document boasted that they would "back door"

4

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> Ventana in its base business, Immuno Histo Chemistry, because their
> instrument could do both.  Essentially they crowed that they were going to
> eat Ventana's lunch.
>
> Well, what a wonderful opportunity they gave us to motivate our
> organization.  Sometimes help comes from the most unusual source.
> Talk about a random event!  We received the information in
> November 97.  Cytologix claimed they would be on the market in six
> months.  We gathered our engineers and asked them what was their
> reaction to Cytologix' boasting.  Did they want to take the challenge?
> We confirmed their market research and finalized our design 2 months
> later.  Fortunately, it only required a modification to one of our
> existing instruments.  Six months later we launched the instrument
> and the rest is history.

*Id.*

Patent Owner alleges that the business plan "described the invention
disclosed and claimed in the '672 Patent," but Patent Owner only generally pointed
to pages 26-28 and 30-31 of the business plan (Ex. D) and did not identify where
the limitations of the claim could be found (Appeal Br. 20-21), a necessary
exercise to show that the claimed subject matter had in fact been copied by
Ventana. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325
(Fed. Cir. 2004). Despite Patent Owner's failure to show where the copied claim
limitations are found in the business plan, we note that page 26 of the plan states:

> The company has identified an approach in which the slide holders
> could be made into single units and the heating elements made part of
> the instrument (instead of the current design which holds five slides
> and consists of a bottom piece which incorporates the heating
> element).
> This new design would create significant advantages, including: . . .
> 3) the heating can now be controlled for each slide, instead of groups
> of five slides.

Dr. Bogen further stated "Ventana copied important aspects of our
technology and developed a new automated slide stainer that included independent
and individual heating." Bogen Decl. ¶ 18.

Patent Owner contends further evidence of copying comprises 1) licensing
by Ventana of two related patents upon which Ventana had been sued for
infringement, and of the '672 patent as part of a settlement after the infringement

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

suit was remanded; 2) and filing a patent application directed to a device said to incorporate individual heating to samples. Bogen Decl. ¶ 18; Appeal Br. 20-21.

"Copying requires duplication of features of the patentee's work based on access to that work." *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337, 1348 (Fed. Cir. 2013). Neither the Examiner nor the Requester provided sufficient evidence to rebut Patent Owner's contention that Ventana had access to CytoLogix's business plan ~~and had copied it~~ and described using it to design a new instrument. ~~The talk by Mr. Schuler in which he describes getting access to CytoLogix's business plan, and copying the device described in it, is adequate evidence of copying.~~ However, statements by Dr. Bogen that Ventana developed a stainer with independent and individual heating is not sufficiently supported by evidence. Patent Owner did not provide evidence that the device developed by Ventana contained individual heaters for each slide support. Mr. Schuler in his talk did not say so. Patent Owner did not introduce evidence that the Ventana device referred to by Mr. Schuler in his talk contained such structures. No evidence of the Ventana device has been identified in the Appeal Brief before us.

In order for evidence of secondary considerations to be persuasive, the Patent Owner has the burden to show a "nexus" or link between what is claimed, and in this case, the alleged copy. *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). Logically, for a secondary consideration to be persuasive evidence of nonobviousness, it must be connected to the features of the claimed invention. Although it is evident that Ventana had access to CytoLogix's business plan, ~~CytoLogix's business plan and knowledge of CytoLogix's concept of individually controlling heat to a microscope slide,~~ Patent Owner did not show that CytoLogix's concept of individually controlling heat to a microscope slide was copied by Ventana and incorporated into their device ~~this element was copied by Ventana and incorporated into their device~~. The evidence of a nexus between copying and the subject matter of claim 2 has therefore been not established by a preponderance of the evidence.

Patent Owner alleges that the Ventana inventors filed a patent application directed to device incorporating individual heating to the sample, which application was said to mature into ~~and identified~~ US Patent 6,296,809 ("the '809 patent," filed Feb. 26, 1999) ~~as having been issued from this application~~. Appeal Br. 21. The '809 patent discloses that "[a]nother disadvantage of the heating units typically employed with automated tissue stainers is that they do not permit the

6

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

temperature of individual slides to be separately controlled." '809 patent, col. 2, ll. 47-50. The '809 specifically discloses:

> Individualized slide temperature control is accomplished by the heating system according to the present invention that has thermal platforms radially mounted to the carousel for heating the slides and sensing the temperature of each.

'809 patent at col. 3, ll. 57-60.

Neither the Requester nor the Examiner provided adequate rebuttal arguments to ~~Requester did not adequately rebut the~~ Patent Owner's contention that the '809 patent provides evidence of copying. ~~Neither did the Examiner.~~

Nonetheless, even if Ventana had ~~the evidence that Ventana~~ copied Patent Owner's concept of heating individual slides by incorporating into their patent application, this is not dispositive because "copying" is only one factor in an obviousness determination. Tseung, which is prior art to the '809 patent, expressly teaches heating two slides individually at different temperatures, and thus addressed the need for heating slides at different temperatures – the same need identified by the '672 patent. '672 patent at col. 2, ll. 8-19. The '672 patent describes individual heaters for each slide support, but describes the advance more narrowly, disclosing specific structure for reducing the wiring complexity (*id.* at col. 2, ll. 20-38; col. 11, ll. 21-22), a feature which is not recited in claim 2.

Claim 2 only require two slides – not the 49 described in the preferred embodiment of the '672 patent, which is said to increase the wiring difficulty and cost of manufacture and servicing. Modifying Tseung by decreasing the size of the heating block to contain a single microscope slide doesn't involve reengineering Tseung's wiring, but simply reduces the number of slides that can be processed by the automated stainer.

In sum, we do not find the evidence of copying persuasive because the concept of heating slides at two different temperatures in an automated slide stainer had already been disclosed by Tseung, and it would have been routine to reduce the support to comprise only a single slide, when a cheaper device was desired. A preponderance of the evidence supports the Examiner's determination that claim 2 would have been obvious to one of ordinary skill in the art in view of Tseung.

7

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

2. Does heating element of claim 2 underlie only one slide?

Patent Owner contends that the Board misapprehended or overlooked claim interpretation arguments and arrived at an incorrect interpretation of claim 2, specifically in concluding that the "the heating element can underlie more than one slide support and still meet the claim limitation" (Dec. App. 9) of Claim 2. Req. Reh'g 5. Rather, Patent Owner argues that claim 2 requires the heating element to underlie only one slide.

Patent Owner contends the Board erred in making the statement in the Decision on Appeal that "Patent Owner has not directed our attention to any limitation in claim 1 or claim 2 that implicitly limits the heating element recited in claim 2 to the support for the single slide." Dec. Appeal 9. Patent Owner argues the Board overlooked Patent Owner's arguments in which such claim language was identified. Request 5-6.

The Decision specifically addressed Patent Owner's arguments concerning the specific limitation in claim 2 "wherein each slide support accommodates only one microscope slide." Dec. App. 10. To the extent the quoted statement above conflicts with the Board's analysis on pages 10-11 of the Decision on Appeal, we strike it from the decision.

In sum, Patent Owner's arguments do not persuade us that we misapprehended or overlooked claim interpretation arguments and arrived at an incorrect interpretation of claim 2.

3. Does Tseung anticipate claim 2?

Patent Owner contends that the Board misapprehended or overlooked claim construction principles and the teachings of Tseung in concluding that Tseung

8

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

anticipates Claim 2. Req. Reh'g 6. Specifically, Patent Owner argues that
Tsueng's slide support does not accommodate only one slide as required by the
claim and that the raised area 202 is not a slide support that accommodates only
one slide as required by the slide because it is still part of a single heating element.
*Id.*

Claim 2 was interpreted to require the recited "slide support to hold only one
microscope slide, but to permit a heating element that heats more than one support.
Dec. App. 9. The '672 patent did not define "slide support." Based on description
in the '672 patent, we interpreted "slide support" to mean a support that has a
location for only single slide. *Id.* at 8. As explained in the Decision, area 202 of
Tsueng's apparatus has a raised surface 202 that serves as a location for only one
slide, meeting the limitation in the claim. *Id.* at 14. Patent Owner did not
persuasively identify a defect in this analysis. Consequently, we are not persuaded
that we misapprehended or overlooked claim construction principles and the
teachings of Tsueng in concluding that Tsueng anticipates Claim 2.

4. Does Tsueng render claim 2 obvious?

Patent Owner contends that the Board misapprehended or overlooked Patent
Owner's argument that "there was no motivation to move away from the batch
heating of Tsueng, e.g., heating batches of 10 slides at a time on a single block, to
individual heating." Req. Reh'g 6.

Patent Owner argues:

Tsueng does not teach individual slide heating or the problems
associated with automating special stains. At most, Tsueng teaches
that batches of slides can be heated to a different temperature than
other batches of slides. This is not the invention described in Claim 2

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> and does not provide any motivation to arrive at the invention of
> Claim 2.

*Id.* at 7.

We agreed with the Examiner's determination that "that it would have been an obvious modification to reduce the number of supports on the heating block of Tseung since the modified apparatus would be simpler in design, require fewer parts, be less expensive, and work in the same manner." Dec. Appeal 17. While there is no explicit suggestion to produce a slide support for a single slide, it is proper to "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1740 (2007). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id.* at 1742.

In agreeing with the Examiner, we did not overlook "complexity argument" as argued by Patent Owner. Req. Reh'g 7. The wiring complexity argument appears to be predicated on a requirement for 40 individual heaters. Appeal Br. 18; Floyd Decl. at p. 10, ¶ 40. However, the Examiner did not propose 40 different heaters, but rather concluded that there is "nothing inventive about altering or adjusting the number of slides any particular slide support could hold, support and individually heat." RAN 15. The Examiner stated:

> Depending on how many samples a user has or needs to examine will determine how many supports the apparatus contain. An apparatus having slide supports which can only accommodate a single slide would have been an obvious design choice, would have worked in the exact same manner as one accommodating more slides.

RAN 36. In other words, the number of slide supports necessary would depend on the needs of the user. Thus, not every obvious configuration would require 40

10

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

individual supports and "a ten-fold increase" in wiring, etc, as argued by Patent Owner. Req. Reh'g 7.

## SUMMARY

The rehearing is **GRANTED-IN-PART**, and the Opinion has been modified, but the disposition of the appealed claims is not changed.


ack

CC:

Patent Owner:

HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 Virginia Road
PO Box 9133
Concord , MA  01742-9133

Third Party Requester:

Andreas Danckers
LEICA BIOSYSTEMS RICHMOND, INC.
PO Box 528
Richard, IL  60071

11



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,671 | 06/29/2011 | 7,553,672 | 1205100-00731US2 | 8066 |

21005        7590        08/25/2014
HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 VIRGINIA ROAD
P.O. BOX 9133
CONCORD, MA 01742-9133

| EXAMINER | |
|---|---|
| DAWSON, GLENN K | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/25/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

LEICA BIOSYSTEMS MELBOURNE PARTY LTD.
Requester and Respondent

v.

DAKO DENMARK A/S
Patent Owner and Appellant

_____

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2
Technology Center 3900

_____

Before MARK NAGUMO, RICHARD M. LEBOVITZ, and JEFFREY B. ROBERTSON, *Administrative Patent Judges.*[1]

LEBOVITZ, *Administrative Patent Judge.*

DECISION ON APPEAL

 This is a decision on the appeal by the Patent Owner from the Patent

Examiner's decision to reject claim 2 in the above-identified *inter partes*

_____

[1] Administrative Patent Judge Rae Lynn P. Guest participated in the Oral Hearing held June 4, 2014, but is unavailable at this time. Judge Robertson has been added to the merits panel. *In re Bose Corp.*, 772 F.2d 866, 869 (Fed. Cir. 1985).

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

reexamination of US 7,553,672 B2. The Board's jurisdiction for this appeal is
under 35 U.S.C. §§ 6(b), 134, and 315. We affirm.

## I. BACKGROUND

The patent in dispute in this appeal is US 7,553,672 B2 ("the '672 patent")
which issued June 30, 2009. The named inventors are Steven A. Bogen, Herbert
H. Loeffler, and John A. Purbrick. The Patent Owner is Dako Denmark A/S.[2]
Appeal Br. 1, dated May 31, 2014.

A request for *inter partes* reexamination of the '672 patent under 35 U.S.C.
§§ 311-318 and 37 C.F.R. §§ 1.902-1.997 was filed June 29, 2011 ("Request").
The Requester is Leica Biosystems Melbourne Party Ltd. Resp't Br. 1, dated July
1, 2013.

The '672 patent is the subject of pending litigation in the U.S. District Court
for the District of Delaware, C.A. No. 11-390-GMS, *Dako Denmark A/S, et al. v.
Leica Microsystem, Inc., et al.* Appeal Br. 1. On October 7, 2011, the district
court granted a stay of the litigation pending the outcome of this reexamination
proceeding. *Id.* The '672 patent is a member of a patent family of related patents.
*See* '672 patent, "Related U.S. Application Data."

An oral hearing took place on June 4, 2014 with both Patent Owner and
Requester in attendance. A transcript has been entered into the record.

Claims

The '672 patent issued with 7 claims. Claims 5-7 have been confirmed.
Appeal Br. 3. Claims 1, 3, and 4 have been canceled. *Id.* Claim 2 is the only

---

[2] The original patent owner is CytoLogix Corp. Appeal Br. 20.

2

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

disputed pending claim. Claim 2, and claim 1 from which it depends, are
reproduced below. The limitations in dispute have been italicized and numbered
[1] to [3]

> 1. A method of processing samples mounted on microscope slides
> comprising: providing a plurality of [1] *slide supports* on a platform,
> [2] *each support being comprised of a heating element that underlies*
> *at least one microscope slide* and having a surface on which the at
> least one microscope slide rests so as to transfer heat to the at least
> one microscope slide, said heating elements being capable of heating
> said microscope slides, under independent electronic control to heat
> some slides to a different temperature than other slides; placing two or
> more microscope slides on the platform; providing relative motion
> between the platform and a liquid dispenser; dispensing liquid from
> the liquid dispenser onto the slides; and on the platform, heating one
> slide to a different temperature than a second slide.

> 2. A method of processing samples mounted on microscope slides as
> claimed in claim 1, [3] *wherein each slide support accommodates*
> *only one microscope slide.*

According to the '672 patent, the invention provides an improved
microscope slide staining device that includes:

> In particular, a plurality of flat heating stations are provided on the
> platform, each heating station supporting at least one microscope slide
> and, in a preferred embodiment, each heating surface supporting a
> single microscope slide. The heating stations are individually
> controlled to control temperatures to which the slides are heated.

'672 patent, col.2, ll. 42-48. The patent explains:

> Since various procedures require heat at different times to enhance the
> rate of chemical reaction, a means has been developed to heat slides to
> different temperatures, independently of the temperatures of other
> slides. This invention allows for heating each slide to its own
> specified temperature.

'672 patent, col.2, ll. 14-19.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Rejections

Patent Owner appeals nine rejections of claim 2. Appeal Br. 3-4. Rejections 1-4 and 9 involve Tseung.[3] Rejections 5-8 involve Bogen '114.[4] Because we affirm the anticipation and obviousness rejections of claim 2 based on Tseung (Rejections 1 and 2), alone, we do not reach Rejections 3-9.


## II. CLAIM INTERPRETATION

The '672 patent expired July 26, 2013, due to non-payment of the maintenance fee due under 37 C.F.R. §1.20(e). The "Board's review of the claims of an expired patent is similar to that of a district court's review, *Ex Parte Papst-Motoren*, 1 USPQ.2d 1655, 1655-56 (B.P.A.I. Dec. 23, 1986); see also MPEP § 2258 I.G (directing Examiners to construe claims pursuant to *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), during reexamination of an expired patent)." *In re Rambus, Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012). As explained in *Philips*, "claims 'must be read in view of the specification, of which they are a part.'" [*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996)]. [The] specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' [*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).]. *Philips*, 415 F.3d at 1315. In addition to the patent specification, the prosecution history of the patent is also pertinent in construing the terms in a claim. *Id.* With these principles in hand, we turn to the claim.

---

[3] Tseung, U.S. 5,439,649, issued August 8, 1995.
[4] Bogen, U.S. 5,645,114, issued July 8, 1997.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Claim 1 comprises a plurality of slide supports. Each slide support is "comprised of a heating element that underlies at least one microscope slide and having a surface on which the at least one microscope slide rests." Claim 2 further recites "wherein each slide support accommodates only one microscope slide." Since claim 2 further limits claim 1, it is reasonable to read the slide support of claim 1 as accommodating more than one slide and the support of claim 2 as narrowing the slide support to accommodating only one slide.

There are two disputes concerning the interpretation of claim 2.

First, the meaning of the phrase "each slide support accommodates only one microscope slide" is in dispute. Requester contends that the disputed phrase is a method limitation. Resp't Br. 11. Under this interpretation, Requester argues that the slide support can hold more than one slide, but holds or "accommodates" only one slide when the claimed method is performed. In contrast, Patent Owner contends that "each slide support accommodates only one microscope slide" is a structural limitation that defines the structure of the claimed slide support as providing support for only one slide. Appeal Br. 14. The Examiner appeared to have applied both interpretations, finding that under either interpretation, the claims are anticipated. Right of Appeal Notice ("RAN") 13.

Second, Patent Owner contends that the claimed "heating element that underlies at least one microscope slide" requires the heating element to underlie only one slide such that each single slide support has an individual heating element. Requester contends, and the Examiner holds, this interpretation is improper and imports limitations from the specification. According to both the Examiner and Requester, claim 2 allows the heating element to underlie more than one slide support.

5

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Analysis

The '672 patent does not expressly define the term "slide support." The only time the term appears in the '672 patent is in the claims. The patent description also does not define the term "accommodates," which is also recited for the first time in the claims.

The term "slide support" first appeared in claims presented by amendment during examination of Appl. No. 10/864,620 ("the '620 application"), of which the '672 patent is the direct continuation. '672 patent, "Related U.S. Application Data" ("Continuation of application No. 10/864,620, filed on Jun. 9, 2004, now Pat. No. 7,217,392"); '620 application , Amendment dated June 10, 2005. During the prosecution of the '620 application, Patent Owner referred to the slide support as the slide frame of Fig. 2.'620 application, Applicant Remarks, p. 6, dated Feb. 27, 2006.

Fig. 2 and related Fig. 5 of the '672 patent (same figures and disclosure as in the '620 application) are reproduced below:

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2



FIG. 2                    FIG. 5

Fig. 2 "is a top view of a slide frame providing five sealed cavities [7a through 7e] above five different slides." '672 patent at col. 3, ll. 16-18. Fig. 5 "is a top view of the slide frame housing with five microscope slides in their appropriate positions, showing the area [striped region] to which heat is applied." *Id.* at col. 3, ll. 21-23. "The slide frame base 8 includes a heated area 9 which underlies each of the slide positions *7a-7e* and incorporates resistive heating elements, not shown." *Id.* at col. 4, ll. 8-12.

As stated by Patent Owner during the prosecution of the parent '620 application, the slide frame 8 in Fig. 2 is a "slide support" that holds five slides. '620 application, Applicant Remarks, p. 6, dated Feb. 27, 2006. This embodiment is consistent with claim 1 which allows the slide support to accommodate more than one slide ("having a surface on which the <u>at least one</u> microscope slide rests" (emphasis added)).

7

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

The question is whether claim 2 has narrowed claim 1 by requiring the slide support to hold only one microscope slide. In describing the subject matter of instant claim 2, Patent Owner stated that the claimed invention involves processing samples on microscope slides which are supported on "slide supports" on a platform. Appeal Br. 2. Patent Owner explained that "each support 8 [is] comprised of a heating element 78 that underlies at least one slide (preferably, just one slide (Fig. 17)) and having a surface 9 on which the slide rests so as to transfer heat to the slide." Appeal Br. 2. Fig. 17 is reproduced below:



FIG. 17

Fig. 17 (reproduced above) shows an embodiment with "forty-nine slide positions" (only 8 positions depicted in drawing). '672 patent at col. 10, ll. 15-27. Each slide in this configuration is held in place by slide chamber clips 76 (not shown) with lateral walls which are said to form a "cavity." *Id.* at col. 8, ll. 10-20; see also Fig. 14A and 14B. The slides are mounted on a slide rotor 77. See Fig. 14A. A single heating element 78 is said to provide "a location 88 for a single slide to be heated." *Id.* at col. 10, ll. 18-20. Patent Owner referred to "slide support 8" in the Appeal Brief on page 2, but there is no element labeled

8

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

"support 8" in Figure 17. However, there is "location 88" which appears to the structure referred to by Patent Owner since it contains heating element 78.

Based on this description in the patent specification, Patent Owner construes "slide support" to be location 88 in Figure 17. Reply Br. 3 (dated December 23, 2013). Patent Owner further argues that because location 88 in Figure 17 holds only one slide and one heating element 78, claim 2 should be interpreted to comprise "a heating element that underlies the only one microscope slide and has a surface on which the only one microscope slide rests so as to transfer heat to the at least one microscope slide." Appeal Br. 14 (emphasis added).

This interpretation is not consistent with the language of the claim when read in view of the specification of the '672 patent. *Philips*, 415 F.3d at 1315. The claim does not require the heating element to be restricted to the slide support which accommodates only one slide. This language does not appear in the claim. Patent Owner has not pointed to any persuasive disclosure in the specification that would dictate such a construction. It is true that Figure 17 shows a single location 88 with a single heating element 87, which does not heat any other location on the platform. However, claim 1 recites "a heating element that underlies at least one microscope slide" (emphasis added), indicating that the heating element can underlie more than one slide. Fig. 5 reproduced above shows such an embodiment. Claim 2 does not explicitly further limit the heating element, indicating that its scope is unchanged from claim 1. Patent Owner has not directed our attention to any limitation in claim 1 or claim 2 that implicitly limits the heating element recited in claim 2 to the support for the single slide. Thus, Patent Owner's argument appears to be based on a reading that would import the specific embodiment of Figure 17 into the claims, i.e., since "location 88" holds only a

9

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

single slide and such a single slide support is shown to contain an individual heater 87, then claim 2 must require that. Reply Br. 3. However, it is improper to import limitations from the specification into the claims. "For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

Patent Owner also argues that slide supports according to claim 2 "(1) accommodate at least one microscope slide; (2) include a heating element that underlies the at least one microscope slide; and (3) have a surface on which the at least one microscope slide rests so as to transfer heat to the at least one microscope slide." Reply Br. 4. Based on these requirements, Patent Owner argues that claim 2 "narrows the structural limitations to an embodiment wherein the slide support accommodates only one microscope slide. Thus, where the slide support accommodates only one microscope slide, the surface of the slide support accommodates only one slide and the heating element that is part of the slide support heats only one microscope slide." *Id.* The claim does not recite this. By the plain language of the claim, the heating element can underlie more than one slide support and still meet the claim limitation.

The interpretation of the slide support advanced by Patent Owner is, in fact, expressly embodied by claim 3 of the parent '392 patent. Claim 1 of the '392 patent is drawn to a microscope slide staining apparatus, and recites:

> a plurality of slide supports, each support being comprised of a heating element that underlies at least one microscope slide and having a surface on which the at least one microscope slide rests so as to transfer heat to the at least one microscope slide.

10

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Claim 3, which depends from claim 1, recites: "wherein each of the heating elements hears [bears] only one microscope slide." These words (or equivalent words), however, do not appear in appealed claim 2 and we shall not read them into the claim.

Requester contends that the recited limitation of claim 2 "properly must be construed to be a method limitation" because "the '692 [sic,'672] patent does not disclose any slide support that is structurally capable of 'accomodat[ing] only one microscope slide.' All of the slide supports disclosed in the '692 [sic,'672]patent – each slide frame 6 in the first embodiment (see Figure 2) and each slide rotor of the second embodiment (see Figure 17) – are constructed such that they are able to 'accommodate' multiple slides . . . " Request, Appendix B1, p. 7 (brackets in original).

We do not agree. Position 88 of Fig. 17 is a slide support for only a single slide. See *supra*.at p. 7-8.

### III. ANTICIPATION

Claim 2 stands rejected under 35 U.S.C. § 102(b) (pre-AIA)[5] as anticipated by Tseung. RAN 34.

An applicant may not receive a patent for an invention that was "(b) . . . was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA). For a prior art reference to anticipate a claim, it must disclose all of the limitations of the

---

[5] The claims are not subject to the first inventor to file provisions of the American Invents Act ("AIA").

11

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

claim, "arranged or combined in the same way as in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008).

In the Request for Reexamination, the Third Party Requester identified in Appendix B.1 where all the limitations of claims 1 and 2 can be found in Tseung. Request, Appendix B.1. Claim 2 recites that "each slide support accommodates only one microscope slide." For this feature, Requester identified Tseung's teaching of "raised areas 202 of a heater block 200 [which] contacts and supports the bottom of only one microscope slide." Request, Appendix B1, p. 7, citing Tseung, col. 12, ll., 12-24 and 49-56; Figs. 9B and 11B.

The method of claim 2 requires: (1) a slide support that comprises a heating element that underlies at least one microscope slide; (2) having a surface on which the at least one microscope slide rests so as to transfer heat; (3) heating one slide to a different temperature than a second slide; and (4) each slide support accommodates only one microscope slide.

All the claimed features are described by Tseung.

First, we address limitations (1), (2), and (4) of claims 2.

12

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Figure 2 of Tseung is reproduced below (as annotated herein):



FIG. 2

Tseung's Figure 2 shows an apparatus for automated staining of tissues and cells on microscope slides.  Figure 2 is a front view showing heating block 200 and raised areas 202 (not numbered in the figure; number added by annotation; *cf.* Fig. 9B, reproduced *infra*).  Tseung at col. 12, ll. 46-58.  The "raised areas 202 press upward into the open bottoms of the wells of the tray and closely contact the individual microscope slides while also acting to precisely locate tray 190 relative to the location of heating block 200." *Id.* at col. 12, ll. 54-56.

13

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Figure 9B, reproduced below, shows the heating block 200 and raised
areas 202.



FIG. 9B

Fig. 9B shows heating block 200, with raised areas 202 which contact the
slide, and depressions 204 which fit the slide carrier. Tseung at col. 12, ll. 51-52.

The raised area 202 meets the limitations of the claimed slide support
because it has (1) a heating element (block 200) which underlies it; and (2) a
surface on which the slide rests to transfer heat (raised area 202). Each raised
area (4) accommodates only one slide as required by claim 2. The raised area is
similar to location 88 in Figure 17 of the '672 patent which Patent Owner argued
serves as the claimed slide support accommodating only one slide.

With regard to element (3) (heating one slide to a different temperature than
a second slide), the following disclosures from Tseng are pertinent:

Tseng teaches that "[e]ach of the individual heater blocks 200 shown in FIG.
9 can be assembled into an array of multiple blocks." Tseung, col. 12, ll. 59-61.
Figure 10 of Tseung, reproduced below, shows an array of heater blocks.

14

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2



FIG. 10

Figure 10 show the heater blocks arranged in an array. Tsuen teaches: "It is then possible to individually heat each of the heater blocks to different temperatures, thereby concurrently providing different temperatures of operation for different reagent configurations without operator intervention." Tseung, col. 12, ll. 62-66.

Based on these disclosures, the preponderance of the evidence supports the Examiner's determination that Tseung describes (3) heating one slide to a different temperature than a second slide. Specifically, the disclosure at column 12 of Tseung refers to heating the blocks to different temperatures. When two blocks are each loaded with at least one slide, each slide is heated to a different temperature as required by claim 2.

15

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Patent Owner argues that "Tseung does not disclose a method for processing microscope slides that includes heating each slide individually as claimed in Claim 2." Appeal Br. 13. As already discussed, Patent Owner's interpretation of the claim is not proper. There is no requirement that each slide support have its own individual heater. This language simply does not appear in the claim.

Patent Owner attempts to distinguish Tseung, stating "[e]ach heating element [in Tseung] does not underlie only one microscope slide and each slide support does not have a surface on which the only one microscope slide rests so as to transfer heat to the only one microscope slide as required by Claim 2 of the '672 Patent." Appeal Br. 13. To the contrary, area 202 is expressly taught by Tseung to "press upward into the open bottoms of the wells of the tray and closely contact the individual microscope slides." Tseung at col. 12, ll. 54-56.

Patent Owner argues that configuration described by Tseung with different heating blocks being heated to different temperatures is no different from the prior art four block thermal recycler disclosed in the specification at column 2, lines 20-26. Appeal Br. 15. Patent Owner does not explain how the disclosure of the four block thermal recycle was clearly disavowed in the specification or during prosecution of the claim. *See SkinMedica, Inc. v. Histogen, Inc.*, 727 F.3d 1187, 1211 (Fed. Cir. 2013); *Aventis Pharmaceuticals Inc. v. Amino Chemicals Ltd.*, 715 F.3d. 1363, 1371-72 (Fed. Cir. 2013). This argument is therefore ineffective in distinguishing claim 2 from Tseung.

In sum, a preponderance of the evidence supports the Examiner's determination that claim 2 is anticipated by Tseung.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

## IV. OBVIOUSNESS

Claim 2 stands rejected under 35 U.S.C. § 103 as obvious in view of Tseung.

In the event claim 2 is determined to require that each slide support have its own individual heating element, the Examiner held that it would have been an obvious modification to reduce the number of supports on the heating block of Tseung since the modified apparatus would be simpler in design, require fewer parts, be less expensive, and work in the same manner. RAN 36. The Examiner explained: "Depending on how many samples a user has or needs to examine will determine how many supports [raised area 202] the apparatus contain. An apparatus having slide supports which can only accommodate a single slide would have been an obvious design choice, would have worked in the exact same manner as one accommodating more slides." *Id.*

Patent Owner contends that if heating were "to be implemented on an automated slide stainer, such as the system in Tseung, it would have been batch heating, with all slides heated to the same temperature for IHC [immunohistochemistry] staining." Appeal Br. 16. This argument, and the related one concerning the complexity of individual heating, ignores the explicit teaching in Tseung "to individually heat each of the heater blocks to different temperatures, thereby concurrently providing different temperatures of operation for different reagent configurations without operator intervention." Tseung at col. 12, ll. 62-66. Likewise, Patent Owner's arguments that there was no need for individual slide heating in IHC is unpersuasive because Tseung expressly teaches utilizing different temperatures in the same apparatus. Appeal Br. 16-19. Indeed, Tseung's automated staining apparatus is not limited to immuno-staining. Tseung at col. 2, ll. 25-31.

17

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Regarding the arguments about the wiring complexity (Appeal Br. 18), Patent Owner appears to have misunderstood the Examiner's argument. The Examiner is not proposing to increase the number of slide supports, but to reduce the number so that each slide support (heat block) comprises only one slide support – without changing the wiring.

Even if the configuration with fewer slide supports is less optimal, a teaching that a result would be inferior or less desirable is not a teaching away unless the use "would render the result inoperable." *In re ICON Health and Fitness Inc.*, 496 F.3d 1374, 1381 (Fed. Cir. 2007). Patent Owner has not directed our attention to credible evidence that the fewer-slide configuration would have been inoperable.

In addition to this, even were the disputed limitation that "each slide support accommodates only one microscope slide" is construed to be a method limitation, it would have been obvious to one of ordinary skill in the art to load the tray with a single slide when only one slide was to be processed by the user.


Copying

As evidence of nonobviousness, Patent Owner also contends that the claimed invention was copied. Appeal Br. 20. A declaration by Steven A. Bogen, a co-inventor of the '672 patent, was provided by Patent Owner as evidence. Declaration of Steven A. Bogen, M.D., Ph.D., dated November 15, 2011 ("Bogen Decl."). According to Patent Owner, a competitor, Ventana, gained access to a confidential business plan (Ex. D of Bogen Decl.) from CytoLogix, the original owner of the '672 patent, and used that plan to develop their own device. *Id.* The

18

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

evidence of copying is derived from a talk given by Jack Schuler, Chairman of

Ventana. Ex. C of Bogen Decl.on. In this speech, Mr. Schuler stated:

> So, a healthy company is one that is paranoid about competition. Let me
> give you an example of how this worked for us at Ventana. Two years ago,
> Ventana's only business was in the field of immuno histo chemistry. We
> have looked at a related field of special stains but determined that the pricing
> was too low. A small startup company in Boston called Cytologix had
> developed an instrument for special stains. They need additional funding to
> complete development and circulated financing memorandum that happened
> to cross my desk – this is when we first heard of this start-up. The document
> outlined why Ventana had underestimated this market, that customers were
> ready to pay a higher price for automation. One they got a foothold in this
> special stains market the document boasted that they would "back door"
> Ventana in its base business, Immuno Histo Chemistry, because their
> instrument could do both. Essentially they crowed that they were going to
> eat Ventana's lunch.

Patent Owner alleges that the business plan "described the invention

disclosed and claimed in the '672 Patent," but Patent Owner only generally pointed

to pages 26-28 and 30-31 of the business plan (Ex. D) and did not identify where

the limitations of the claim could be found (Appeal Br. 20-21), a necessary

exercise to show that the claimed subject matter had in fact been copied by

Ventana. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325

(Fed. Cir. 2004).Despite Patent Owner's failure to show where the copied claim

limitations are found in the business plan, we note that page 26 of the plan states:

> The company has identified an approach in which the slide holders
> could be made into single units and the heating elements made part of
> the instrument (instead of the current design which holds five slides
> and consists of a bottom piece which incorporates the heating
> element).

19

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

>This new design would create significant advantages, including: . . .
>3) the heating can now be controlled for each slide, instead of groups
>of five slides.

Dr. Bogen further stated "Ventana copied important aspects of our technology and developed a new automated slide stainer that included independent and individual heating." Bogen Decl. ¶ 18.

Patent Owner contends further evidence of copying comprises 1) licensing by Ventana of two related patents upon which Ventana had been sued for infringement, and of the '672 patent as part of a settlement after the infringement suit was remanded; 2) and filing a patent application directed to a device said to incorporate individual heating to samples. Bogen Decl. ¶ 18; Appeal Br. 20-21.

"Copying requires duplication of features of the patentee's work based on access to that work." *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337, 1348 (Fed. Cir. 2013). Neither the Examiner nor the Requester provided sufficient evidence to rebut Patent Owner's contention that Ventana had access to CytoLogix's business plan and had copied it. The talk by Mr. Schuler in which he describes getting access to CytoLogix's business plan, and copying the device described in it, is adequate evidence of copying. However, statements by Dr. Bogen that Ventana developed a stainer with independent and individual heating is not sufficiently supported by evidence. Patent Owner did not provide evidence that the device developed by Ventana contained individual heaters for each slide support. Mr. Schuler in his talk did not say so. Patent Owner did not introduce evidence that the Ventana device referred to by Mr. Schuler in his talk contained such structures. No Ventana device has been identified in the Appeal Brief before us.

20

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

In order for evidence of secondary considerations to be persuasive, the Patent Owner has the burden to show a "nexus" or link between what is claimed, and in this case, the alleged copy. *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). Logically, for a secondary consideration to be persuasive evidence of nonobviousness, it must be connected to the features of the claimed invention. Although it is evident that Ventana had CytoLogix's business plan and knowledge of CytoLogix's concept of individually controlling heat to a microscope slide, Patent Owner did not show that this element was copied by Ventana and incorporated into their device. The evidence of a nexus between copying and the subject matter of claim 2 has therefore been not established by a preponderance of the evidence.

Patent Owner alleges that the Ventana filed a patent application directed to device incorporating individual heating to the sample, and identified US Patent 6,296,809 ("the '809 patent," filed Feb. 26, 1999) as having been issued from this application. Appeal Br. 21. The '809 patent discloses that "[a]nother disadvantage of the heating units typically employed with automated tissue stainers is that they do not permit the temperature of individual slides to be separately controlled." '809 patent, col. 2, ll. 47-50. The '809 specifically discloses:

> Individualized slide temperature control is accomplished by the heating system according to the present invention that has thermal platforms radially mounted to the carousel for heating the slides and sensing the temperature of each.

'809 patent at col. 3, ll. 57-60.

Requester did not adequately rebut the Patent Owner's contention that the '809 patent provides evidence of copying. Neither did the Examiner.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Nonetheless, the evidence that Ventana copied Patent Owner's concept of heating individual slides by incorporating into their patent application is not dispositive because "copying" is only one factor in an obviousness determination. Tseung, which is prior art to the '809 patent, expressly teaches heating two slides individually at different temperatures, and thus addressed the need for heating slides at different temperatures – the same need identified by the '672 patent. '672 patent at col. 2, ll. 8-19. The '672 patent describes individual heaters for each slide support, but describes the advance more narrowly, disclosing specific structure for reducing the wiring complexity (*id.* at col. 2, ll. 20-38; col. 11, ll. 21-22), a feature which is not recited in claim 2.

Claim 2 only require two slides – not the 49 described in the preferred embodiment of the '672 patent, which is said to increase the wiring difficulty and cost of manufacture and servicing. Modifying Tseung by decreasing the size of the heating block to contain a single microscope slide doesn't involve reengineering Tseung's wiring, but simply reduces the number of slides that can be processed by the automated stainer.

In sum, we do not find the evidence of copying persuasive because the concept of heating slides at two different temperatures in an automated slide stainer had already been disclosed by Tseung, and it would have been routine to reduce the support to comprise only a single slide, when a cheaper device was desired. A preponderance of the evidence supports the Examiner's determination that claim 2 would have been obvious to one of ordinary skill in the art in view of Tseung.

22

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

## TIME PERIOD FOR RESPONSE

In accordance with 37 C.F.R. § 41.79(a)(1), the "[p]arties to the appeal may file a request for rehearing of the decision within one month of the date of: . . . [t]he original decision of the Board under § 41.77(a)." A request for rehearing must be in compliance with 37 C.F.R. § 41.79(b). Comments in opposition to the request and additional requests for rehearing must be in accordance with 37 C.F.R. § 41.79(c) & (d), respectively. Under 37 C.F.R. § 41.79(e), the times for requesting rehearing under paragraph (a) of this section, for requesting further rehearing under paragraph (d) of this section, and for submitting comments under paragraph (c) of this section may not be extended.

An appeal to the United States Court of Appeals for the Federal Circuit under 35 U.S.C. §§ 141-144 and 315 and 37 C.F.R. § 1.983 for an *inter partes* reexamination proceeding "commenced" on or after November 2, 2002 may not be taken "until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and appealable by any party to the appeal to the Board." 37 C.F.R. § 41.81. *See also* MPEP § 2682 (8th ed., Rev. 7, July 2008).

In the event neither party files a request for rehearing within the time provided in 37 C.F.R. § 41.79, and this decision becomes final and appealable under 37 C.F.R. § 41.81, a party seeking judicial review must timely serve notice on the Director of the United States Patent and Trademark Office. See 37 C.F.R. §§ 90.1 and 1.983.

AFFIRMED

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

CC:

Patent Owner:

HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 Virginia Road
PO Box 9133
Concord , MA  01742-9133

Third Party Requester:

Andreas Danckers
LEICA BIOSYSTEMS RICHMOND, INC.
PO Box 528
Richard, IL  60071

**From:** ██████████ .
**To:**     appeal
**Subject:** 95/001,671 Agency Petition (fee) Transaction Submitted
**Date:** Wednesday, August 19, 2015 4:53:53 PM

---



**From:** FilingNotice@cafc.uscourts.gov [mailto:FilingNotice@cafc.uscourts.gov]
**Sent:** Wednesday, August 19, 2015 1:14 PM
**To:** ████████████████████████
**Subject:** Agency Petition (fee) Transaction Submitted

Transaction submitted by John M. Griem on 08/19/2015 at 01:14 PM

**Description**: Agency Petition (fee)
**Payment Method**: CreditCard
**Fee Receipt Number:** ████████████
**Fee Amount**: $500.00

### UNITED STATES COURT OF APPEALS
### FOR THE FEDERAL CIRCUIT

**DAKO DENMARK A/S**
**Owner/Appellant**

**v.**

**LEICA BIOSYSTEMS MELBOURNE PARTY LTD.**
**Requester/Appellee**

**Re-Exam Control No: 95/001,671**

### NOTICE FORWARDING CERTIFIED LIST

A **Notice of Appeal** to the United States Court of Appeals for the Federal

Circuit, was timely filed by **Appellant, Dako Denmark A/S**, on August 19, 2015,

and a **Notice of Cross-Appeal** was timely filed by **Appellee, Leica Biosystems**

**Melbourne Party Ltd.**, on September 1, 2015, in the United States Patent and

Trademark Office in connection with the above identified *inter partes* re-

examination proceeding. Pursuant to 35 U.S.C. § 143, and Fed. Cir. R. 17(b)(1),

a Certified List is this day being forwarded to the Federal Circuit.

Respectfully submitted,

By: *Macia L. Fletcher*

Macia L. Fletcher
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

Date: September 28, 2015

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the

foregoing has been served on Appellant and Appellee this 28th day of

September, 2015, as follows:


Patent Owner:

John M. Griem, Jr.
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005


Third Party Requester:

Dana M. Herberholz
C. Kevin Speirs
Michael R. McCarthy
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID 83702



By: _Macia L. Fletcher_____
Macia L. Fletcher
Paralegal
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450
571-272-9035

Form PTO 55 (12-80)

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

### September 28, 2015

(Date)

**THIS IS TO CERTIFY** that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the *Inter Partes Reexamination* proceeding identified below:

### LEICA BIOSYSTEMS MELBOURNE PARTY LTD.
Third Party Requester

v.

### DAKO DENMARK A/S
Patent Owner

Appeal 2014-002692
Reexamination Control No. 95/001,671
Patent 7,553,672 B2

By authority of the

### DIRECTOR OF THE UNITED STATES
### PATENT AND TRADEMARK OFFICE



*Certifying Officer*



**Prosecution History Reexam Control Number 95/001,671**

| Date | Description |
|---|---|
| 06/29/2011 | REQUEST FOR INTER PARTES REEXAMINATION |
| 06/29/2011 | INFORMATION DISCLOSURE STATEMENT |
| 06/29/2011 | TITLE REPORT |
| 07/06/2011 | NOTICE OF INTER PARTES REEXAMINATION REQUEST FILING DATE |
| 07/06/2011 | NOTICE OF ASSIGNMENT OF INTER PARTES REEXAMINATION REQUEST |
| 09/22/2011 | ORDER GRANTING REQUEST FOR INTER PARTES REEXAMINATION |
| 09/22/2011 | NON-FINAL OFFICE ACTION |
| 11/21/2011 | RESPONSE AFTER NON-FINAL ACTION |
| 11/21/2011 | INFORMATION DISCLOSURE STATEMENT |
| 12/21/2011 | THIRD PARTY REQUESTER COMMENTS TO PATENT OWNER'S RESPONSE RESPONSE AFTER NON-FINAL ACTION |
| 05/25/2012 | ACTION CLOSING PROSECUTION |
| 06/15/2012 | REQUEST FOR EXTENSION OF TIME |
| 06/18/2012 | EXTENSION OF TIME GRANTED |
| 07/25/2012 | PATENT OWNER'S RESPONSE TO ACTION CLOSING PROSECUTION |
| 08/24/2012 | THIRD PARTY REQUESTER COMMENTS AFTER ACTION CLOSING PROSECUTION |
| 02/28/2013 | RIGHT OF APPEAL NOTICE |
| 03/29/2013 | NOTICE OF APPEAL (PATENT OWNER) |
| 04/01/2013 | NOTICE OF CROSS-APPEAL (THIRD PARTY REQUESTER) |
| 05/30/2013 | PETITION FOR ENTRY OF ARGUMENTS AND EVIDENCE SUBMITTED WITH PATENT OWNER'S RESPONSE TO ACTION CLOSING PROSECUTION |
| 05/30/2013 | PETITION TO SUSPEND APPLICATION TO PERMIT PATENT OWNER TO SUBMIT CORRECTED PAPERS OR FOR ENTRY OF ARGUMENTS AND EVIDENCE SUBMITTED WITH RESPONSE TO ACTION CLOSING PROSECUTION |
| 05/31/2013 | APPEAL BRIEF |
| 06/28/2013 | THIRD PARTY REQUESTER POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS |
| 06/28/2013 | REPLY BRIEF |

**Prosecution History Reexam Control Number 95/001,671**

| | |
|---|---|
| 07/01/2013 | PETITION TO DENY PATENT OWNER'S PETITION FOR ENTRY OF ARGUMENTS AND EVIDENCE SUBMITTED TO RESPONSE TO ACTION CLOSING PROSECUTION |
| 07/01/2013 | THIRD PARTY REQUESTER'S OPPOSITION TO PETITON FOR ENTRY OF ARGUMENTS AND EVIDENCE SUBMITTED TO RESPONSE TO ACTION CLOSING PROSECUTION |
| 07/01/2013 | PETITION TO DENY PATENT OWNER'S PETITION TO SUSPEND APPLICATION TO PERMIT ENTRY OF ARGUMENTS AND EVIDENCE SUBMITTED WITH RESPONSE TO ACTION CLOSING PROSECUTION |
| 07/01/2013 | THIRD PARTY REQUESTER'S OPPOSITION TO PETITION TO SUSPEND APPLICATION TO PERMIT ENTRY OF ARGUMENTS AND EVIDENCE SUBMITTED WITH RESPONSE TO ACTION CLOSING PROSECUTION |
| 07/01/2013 | THIRD PARTY REQUESTER'S CORRECTED REPLY BRIEF |
| 09/27/2013 | PETITION DECISION - DISMISSED |
| 10/11/2013 | PETITION DECISION - DISMISSED |
| 10/24/2013 | DECISION EXPUNGING PAPERS |
| 11/25/2013 | EXAMINER'S ANSWER |
| 12/23/2013 | REBUTTAL BRIEF |
| 12/24/2013 | THIRD PARTY REQUESTER'S NOTICE OF RECENT DECISION |
| 01/20/2014 | REBUTTAL BRIEF ENTERED |
| 01/23/2014 | THIRD PARTY REQUESTER'S REQUEST FOR ORAL HEARING |
| 02/07/2014 | PATAB DOCKETING NOTICE |
| 02/18/2014 | PETITION DECISION - DISMISSED |
| 03/13/2014 | NOTIFICATION OF APPEAL HEARING |
| 04/02/2014 | PATENT OWNER'S CONFIRMATION OF HEARING |
| 04/02/2014 | THIRD PARTY REQUESTER'S REQUEST FOR ORAL HEARING |
| 04/24/2014 | PATENT OWNER'S REQUEST FOR POSTPONEMENT OF ORAL HEARING |
| 05/14/2014 | THIRD PARTY REQUESTER POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS |
| 05/15/2014 | THIRD PARTY REQUESTER'S CONFIRMATION OF HEARING |
| 05/20/2014 | THIRD PARTY RQUESTER'S NOTIFICATION OF SERVICE OF POWER OF ATTORNEY |
| 05/21/2014 | DECISION  - REQUEST TO POSTPONE ORAL HEARING |
| 05/29/2014 | PATENT OWNER'S CONFIRMATION OF HEARING |

**Prosecution History Reexam Control Number 95/001,671**

| | |
|---|---|
| 07/25/2014 | ORAL HEARING TRANSCRIPT |
| 08/25/2014 | PATAB DECISION ON APPEAL |
| 09/24/2014 | PATENT OWNER'S REQUEST FOR REHEARING |
| 10/24/2014 | THIRD PARTY REQUESTER'S OPPOSITION TO REQUEST FOR REHEARING |
| 07/01/2015 | PTAB DECISION ON REHEARING |

*Inter Partes* Reexamination for U.S. Patent 7,553,672 B2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re *Inter Partes* Reexamination of: | ) |
| | ) |
| U.S. Patent No. 7,553,672 B2 | ) |
| | ) |
| Issued: June 30, 2009 | ) Confirmation Nos.: 8066 |
| | ) |
| Inventors:     Steven A. Bogen | ) Group Art Unit:  3993 |
|                   Herbert H. Loeffler | ) |
|                   John A. Purbrick | ) Examiner:  DAWSON, Glenn K. |
| | ) |
| Control No.: 95/001,671 | ) |
| | ) |
| Filed: May 14, 2007 | ) |
| | ) |
| Title: Random Access Slide Stainer With | ) |
|      Independent Slide Heating Regulation | ) |
| | ) |

> **Certificate of EFS-Web Transmission**
> I hereby certify that this correspondence is being transmitted via the U.S. Patent and Trademark Office electronic filing system (EFS-Web) to the USPTO on August 19, 2015
>
> Signed:   John M. Griem, Jr.

Director of the United States Patent and Trademark Office
Office of the General Counsel
10B20
Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

**Mail Stop 8**
Attn:  Office of the Solicitor
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA  22313-1450

## NOTICE OF APPEAL TO THE COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT BY PATENT OWNER

SIR:

Pursuant to the provisions of 37 C.F.R. § 1.983, Patent Owner, Dako Denmark A/S

hereby provides Notice of Appeal to the United States Court of Appeals for the Federal Circuit

from the Decision on Appeal of the Patent Trial and Appeal Board dated August 25, 2014

Reexamination Control No.: 95/001,671
Patent No. 7,553,672 B2

("Decision on Appeal"), and from the Decision on Rehearing of the Patent Trial and Appeal

Board dated the July 1, 2015. See 35 U.S.C. § 141.

A copy of the decisions appealed from are submitted herewith as Exhibit A.

Without limitation, the primary issues on appeal are expected to be whether the Board, in

the Decision on Appeal, properly construed claim 2 of the patent at issue, affirmed the

Examiner's determinations that claim 2 of the patent at issue was anticipated by Tseung and

obvious in view of Tseung, and whether the Board properly denied those portions of Patent

Owner's request for rehearing of the Decision on Appeal, deciding that the Decision on Appeal

did not set forth a new ground of rejection, that the Board did not err in its construction of claim

2 of the patent at issue, and that claim 2 of the patent at issue was anticipated and obvious in

view of Tseung.

Three copies of this Notice of Appeal together with the appropriate fee (Court of Appeals

for the Federal Circuit, Miscellaneous Fee Schedule effective December 1, 2013) are being filed

in the United States Court of Appeals for the Federal Circuit.

A copy of this Notice is being filed with the Patent Trial and Appeal Board electronically.

Date:  August 19, 2015                              Respectfully submitted,

**Carter Ledyard & Milburn LLP**
2 Wall Street                                       John M. Griem, Jr.
New York, New York  10005                           Reg. No. 40,005
Telephone:  212.732.3200                            Attorney for Patent Owner
Facsimile:  212.732.3232                            Dako Denmark A/S
CUSTOMER NO.: 63973                                 Customer No. 63973

7669818.1

Reexamination Control No.: 95/001,671
Patent No. 7,553,672 B2

# EXHIBIT A



United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,671 | 06/29/2011 | 7,553,672 | 1205100-00731US2 | 8066 |

21005        7590        07/01/2015
HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 VIRGINIA ROAD
P.O. BOX 9133
CONCORD, MA 01742-9133

| EXAMINER |
|---|
| DAWSON, GLENN K |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/01/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

LEICA BIOSYSTEMS MELBOURNE PARTY LTD.
Requester and Respondent

v.

DAKO DENMARK A/S
Patent Owner and Appellant
_____

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2
Technology Center 3900
_____

Before MARK NAGUMO, RICHARD M. LEBOVITZ, and JEFFREY B. ROBERTSON, *Administrative Patent Judges*.

LEBOVITZ, *Administrative Patent Judge*.

DECISION ON REHEARING

Patent Owner, who is the Appellant in this appeal, requests rehearing under 37 C.F.R. § 41.79 ("Req. Reh'g") of the Decision on Appeal dated August 25, 2014 (the "Decision" or "Dec. Appeal"). Requester and Respondent filed Comments on the Request on October 24, 2014.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Patent Owner contends new grounds of rejection were not designated as
such and that the Decision erred with respect to rejections of claim 2 over Tseung.

1.  Was a new ground of rejection set forth in the Decision on Appeal?

Patent Owner contends that the Board upheld the Examiner's obviousness
rejection of Tseung on grounds that had not been advanced by the Examiner.  Req.
Reh'g 1.

A.  One of the issues in the appeal is the obviousness of making a slide
staining apparatus with heating blocks which hold only a single slide, where each
block can be heated to a different temperature.  In their Appeal Brief, Patent
Owner had argued:

> [M]odifying a stainer with four heating blocks each holding ten slides
> to forty individual slide heaters is far more than an arbitrary design
> choice and would result in substantial increases in cost and
> complexity.  For example, such a modification could require a ten-
> fold increase in the number of heating elements, supply wires,
> temperature sensing wires, power switching circuits, etc.  Increasing
> the number of these elements by an order of magnitude also has an
> effect on reliability since there would be more parts subject to failure.

Patent Owner Appeal Br. 8.

The Board responded to this argument, which the Decision characterized as
the "complexity argument," by stating that the "Examiner is not proposing to
increase the number of slide supports, but to reduce the number so that each slide
support (heat block) comprises only one slide support – without changing the
wiring."  Dec. Appeal 18.  The Examiner in the Right of Appeal Notice ("RAN")
had stated:

> Furthermore, even if Tseung failed to teach this limitation, the
> examiner contends that it would have been obvious to have provided

2

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

slide supports which could only support and individually heat one and only one slide, because the number of slides supportable by anyone slide support would be completely arbitrary. One could produce a slide support which could hold, support and individually heat 50 slides, or two supports which could each hold, support and individually heat 25 slides, or 5 supports which could each hold, support and individually heat 10 slides each, or ... 50 slide supports which could each hold, support and individually heat only a single slide. If someone only needed to routinely process 4 slides, for example, an apparatus having four different slide supports, each holding, supporting and individually heating only a single slide would suffice. There is nothing inventive about altering or adjusting the number of slides any particular slide support could hold, support and individually heat.

RAN 15 (emphasis added).

Patent Owner contends that "the numerical reference to '4 slides' in the next sentence (referring to a 'need[] to routinely process 4 slides') does not suggest an association with the block of Tseung." Request 3.

We do not agree with Patent Owner's statement. In the same paragraph, and in the immediately preceding sentence, the Examiner had specifically discussed Tseung: "Furthermore, even if Tseung failed to teach this limitation, the examiner contends that it would have been obvious to have provided slide supports which could only support and individually heat one and only one slide, because the number of slides supportable by anyone slide support would be completely arbitrary." RAN 15. Indeed, the entire paragraph is a response to Patent Owner's argument that there is no motivation to provide Tseung with individual slide heating. *Id.* at 14. Consequently, the evidence of record does not support Patent Owner's contention that a new grounds of rejection had been set forth in the Decision on Appeal.

3

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

B.  Patent Owner also contends the Board's discussion of "copying" set forth a new ground of rejection.  Req. Reh'g 4.  Specifically, Patent Owner argues that the "Examiner found no evidence of copying. The Board reversed this determination, finding copying."  *Id.*

Although our final conclusion was that copying of the features of the claimed invention had not been established by Patent Owner, several statements in the section titled "Copying" in the Decision on Appeal were imprecisely worded.  As a consequence, we delete the entire copying section on pages 18-22 and replace it with the following section.  (Underlining shows the material added to the discussion; the deleted text is shown as a cross-out.)


Copying
       As evidence of nonobviousness, Patent Owner also contends that the claimed invention was copied.  Appeal Br. 20.  A declaration by Steven A. Bogen, a co-inventor of the '672 patent, was provided by Patent Owner as evidence. Declaration of Steven A. Bogen, M.D., Ph.D., dated November 15, 2011 ("Bogen Decl.").  According to Patent Owner, a competitor, Ventana, gained access to a confidential business plan (Ex. D of Bogen Decl.) from CytoLogix, the original owner of the '672 patent, and used that plan to develop their own device.  *Id.*  The evidence of copying is derived from a talk given by Jack Schuler, Chairman of Ventana.  Ex. C of Bogen Decl.  In this speech, Mr. Schuler stated:
       So, a healthy company is one that is paranoid about competition.  Let me give you an example of how this worked for us at Ventana.  Two years ago, Ventana's only business was in the field of immuno histo chemistry.  We have looked at a related field of special stains but determined that the pricing was too low.  A small startup company in Boston called Cytologix had developed an instrument for special stains.  They need additional funding to complete development and circulated financing memorandum that happened to cross my desk – this is when we first heard of this start-up.  The document outlined why Ventana had underestimated this market, that customers were ready to pay a higher price for automation.  One they got a foothold in this special stains market the document boasted that they would "back door"

4

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> Ventana in its base business, Immuno Histo Chemistry, because their
> instrument could do both.  Essentially they crowed that they were going to
> eat Ventana's lunch.
>
> Well, what a wonderful opportunity they gave us to motivate our
> organization.  Sometimes help comes from the most unusual source.
> Talk about a random event!  We received the information in
> November 97.  Cytologix claimed they would be on the market in six
> months.  We gathered our engineers and asked them what was their
> reaction to Cytologix' boasting.  Did they want to take the challenge?
> We confirmed their market research and finalized our design 2 months
> later.  Fortunately, it only required a modification to one of our
> existing instruments.  Six months later we launched the instrument
> and the rest is history.

*Id*.

Patent Owner alleges that the business plan "described the invention
disclosed and claimed in the '672 Patent," but Patent Owner only generally pointed
to pages 26-28 and 30-31 of the business plan (Ex. D) and did not identify where
the limitations of the claim could be found (Appeal Br. 20-21), a necessary
exercise to show that the claimed subject matter had in fact been copied by
Ventana. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325
(Fed. Cir. 2004). Despite Patent Owner's failure to show where the copied claim
limitations are found in the business plan, we note that page 26 of the plan states:

> The company has identified an approach in which the slide holders
> could be made into single units and the heating elements made part of
> the instrument (instead of the current design which holds five slides
> and consists of a bottom piece which incorporates the heating
> element).
> This new design would create significant advantages, including: . . .
> 3) the heating can now be controlled for each slide, instead of groups
> of five slides.

Dr. Bogen further stated "Ventana copied important aspects of our
technology and developed a new automated slide stainer that included independent
and individual heating." Bogen Decl. ¶ 18.

Patent Owner contends further evidence of copying comprises 1) licensing
by Ventana of two related patents upon which Ventana had been sued for
infringement, and of the '672 patent as part of a settlement after the infringement

5

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

suit was remanded; 2) and filing a patent application directed to a device said to incorporate individual heating to samples. Bogen Decl. ¶ 18; Appeal Br. 20-21.

"Copying requires duplication of features of the patentee's work based on access to that work." *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337, 1348 (Fed. Cir. 2013). Neither the Examiner nor the Requester provided sufficient evidence to rebut Patent Owner's contention that Ventana had access to CytoLogix's business plan ~~and had copied it~~ and described using it to design a new instrument. ~~The talk by Mr. Schuler in which he describes getting access to CytoLogix's business plan, and copying the device described in it, is adequate evidence of copying.~~ However, statements by Dr. Bogen that Ventana developed a stainer with independent and individual heating is not sufficiently supported by evidence. Patent Owner did not provide evidence that the device developed by Ventana contained individual heaters for each slide support. Mr. Schuler in his talk did not say so. Patent Owner did not introduce evidence that the Ventana device referred to by Mr. Schuler in his talk contained such structures. No evidence of the Ventana device has been identified in the Appeal Brief before us.

In order for evidence of secondary considerations to be persuasive, the Patent Owner has the burden to show a "nexus" or link between what is claimed, and in this case, the alleged copy. *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). Logically, for a secondary consideration to be persuasive evidence of nonobviousness, it must be connected to the features of the claimed invention. Although it is evident that Ventana had access to CytoLogix's business plan, ~~CytoLogix's business plan and knowledge of CytoLogix's concept of individually controlling heat to a microscope slide,~~ Patent Owner did not show that CytoLogix's concept of individually controlling heat to a microscope slide was copied by Ventana and incorporated into their device ~~this element was copied by Ventana and incorporated into their device~~. The evidence of a nexus between copying and the subject matter of claim 2 has therefore been not established by a preponderance of the evidence.

Patent Owner alleges that the Ventana inventors filed a patent application directed to device incorporating individual heating to the sample, which application was said to mature into ~~and identified~~ US Patent 6,296,809 ("the '809 patent," filed Feb. 26, 1999) ~~as having been issued from this application~~. Appeal Br. 21. The '809 patent discloses that "[a]nother disadvantage of the heating units typically employed with automated tissue stainers is that they do not permit the

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

temperature of individual slides to be separately controlled." '809 patent, col. 2, ll. 47-50. The '809 specifically discloses:

> Individualized slide temperature control is accomplished by the heating system according to the present invention that has thermal platforms radially mounted to the carousel for heating the slides and sensing the temperature of each.

'809 patent at col. 3, ll. 57-60.

<u>Neither the Requester nor the Examiner provided adequate rebuttal arguments to</u> ~~Requester did not adequately rebut the~~ Patent Owner's contention that the '809 patent provides evidence of copying. ~~Neither did the Examiner.~~

Nonetheless, <u>even if Ventana had</u> ~~the evidence that Ventana~~ copied Patent Owner's concept of heating individual slides by incorporating into their patent application<u>, this</u> is not dispositive because "copying" is only one factor in an obviousness determination. Tseung, which is prior art to the '809 patent, expressly teaches heating two slides individually at different temperatures, and thus addressed the need for heating slides at different temperatures – the same need identified by the '672 patent. '672 patent at col. 2, ll. 8-19. The '672 patent describes individual heaters for each slide support, but describes the advance more narrowly, disclosing specific structure for reducing the wiring complexity (*id.* at col. 2, ll. 20-38; col. 11, ll. 21-22), a feature which is not recited in claim 2.

Claim 2 only require two slides – not the 49 described in the preferred embodiment of the '672 patent, which is said to increase the wiring difficulty and cost of manufacture and servicing. Modifying Tseung by decreasing the size of the heating block to contain a single microscope slide doesn't involve reengineering Tseung's wiring, but simply reduces the number of slides that can be processed by the automated stainer.

In sum, we do not find the evidence of copying persuasive because the concept of heating slides at two different temperatures in an automated slide stainer had already been disclosed by Tseung, and it would have been routine to reduce the support to comprise only a single slide, when a cheaper device was desired. A preponderance of the evidence supports the Examiner's determination that claim 2 would have been obvious to one of ordinary skill in the art in view of Tseung.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

2.  Does heating element of claim 2 underlie only one slide?

Patent Owner contends that the Board misapprehended or overlooked claim interpretation arguments and arrived at an incorrect interpretation of claim 2, specifically in concluding that the "the heating element can underlie more than one slide support and still meet the claim limitation" (Dec. App. 9) of Claim 2.  Req. Reh'g 5.  Rather, Patent Owner argues that claim 2 requires the heating element to underlie only one slide.

Patent Owner contends the Board erred in making the statement in the Decision on Appeal that "Patent Owner has not directed our attention to any limitation in claim 1 or claim 2 that implicitly limits the heating element recited in claim 2 to the support for the single slide."  Dec. Appeal 9.  Patent Owner argues the Board overlooked Patent Owner's arguments in which such claim language was identified.  Request 5-6.

The Decision specifically addressed Patent Owner's arguments concerning the specific limitation in claim 2 "wherein each slide support accommodates only one microscope slide."  Dec. App. 10.  To the extent the quoted statement above conflicts with the Board's analysis on pages 10-11 of the Decision on Appeal, we strike it from the decision.

In sum, Patent Owner's arguments do not persuade us that we misapprehended or overlooked claim interpretation arguments and arrived at an incorrect interpretation of claim 2.

3.  Does Tseung anticipate claim 2?

Patent Owner contends that the Board misapprehended or overlooked claim construction principles and the teachings of Tseung in concluding that Tseung

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

anticipates Claim 2. Req. Reh'g 6. Specifically, Patent Owner argues that
Tsueng's slide support does not accommodate only one slide as required by the
claim and that the raised area 202 is not a slide support that accommodates only
one slide as required by the slide because it is still part of a single heating element.
*Id*.

Claim 2 was interpreted to require the recited "slide support to hold only one
microscope slide, but to permit a heating element that heats more than one support.
Dec. App. 9. The '672 patent did not define "slide support." Based on description
in the '672 patent, we interpreted "slide support" to mean a support that has a
location for only single slide. *Id*. at 8. As explained in the Decision, area 202 of
Tsueng's apparatus has a raised surface 202 that serves as a location for only one
slide, meeting the limitation in the claim. *Id*. at 14. Patent Owner did not
persuasively identify a defect in this analysis. Consequently, we are not persuaded
that we misapprehended or overlooked claim construction principles and the
teachings of Tsueng in concluding that Tsueng anticipates Claim 2.

4. Does Tsueng render claim 2 obvious?

Patent Owner contends that the Board misapprehended or overlooked Patent
Owner's argument that "there was no motivation to move away from the batch
heating of Tsueng, e.g., heating batches of 10 slides at a time on a single block, to
individual heating." Req. Reh'g 6.

Patent Owner argues:

Tsueng does not teach individual slide heating or the problems
associated with automating special stains. At most, Tsueng teaches
that batches of slides can be heated to a different temperature than
other batches of slides. This is not the invention described in Claim 2

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

and does not provide any motivation to arrive at the invention of
Claim 2.

*Id*. at 7.

We agreed with the Examiner's determination that "that it would have been
an obvious modification to reduce the number of supports on the heating block of
Tseung since the modified apparatus would be simpler in design, require fewer
parts, be less expensive, and work in the same manner." Dec. Appeal 17. While
there is no explicit suggestion to produce a slide support for a single slide, it is
proper to "take account of the inferences and creative steps that a person of
ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct.
1727, 1740 (2007). "A person of ordinary skill is also a person of ordinary
creativity, not an automaton." *Id*. at 1742.

In agreeing with the Examiner, we did not overlook "complexity argument"
as argued by Patent Owner. Req. Reh'g 7. The wiring complexity argument
appears to be predicated on a requirement for 40 individual heaters. Appeal Br.
18; Floyd Decl. at p. 10, ¶ 40. However, the Examiner did not propose 40 different
heaters, but rather concluded that there is "nothing inventive about altering or
adjusting the number of slides any particular slide support could hold, support and
individually heat." RAN 15. The Examiner stated:

> Depending on how many samples a user has or needs to examine will
> determine how many supports the apparatus contain. An apparatus
> having slide supports which can only accommodate a single slide
> would have been an obvious design choice, would have worked in the
> exact same manner as one accommodating more slides.

RAN 36. In other words, the number of slide supports necessary would depend on
the needs of the user. Thus, not every obvious configuration would require 40

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

individual supports and "a ten-fold increase" in wiring, etc, as argued by Patent
Owner.  Req. Reh'g 7.

## SUMMARY

The rehearing is **GRANTED-IN-PART**, and the Opinion has been
modified, but the disposition of the appealed claims is not changed.


ack

CC:

Patent Owner:

HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 Virginia Road
PO Box 9133
Concord , MA  01742-9133

Third Party Requester:

Andreas Danckers
LEICA BIOSYSTEMS RICHMOND, INC.
PO Box 528
Richard, IL  60071



U‌NITED S‌TATES P‌ATENT AND T‌RADEMARK O‌FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,671 | 06/29/2011 | 7,553,672 | 1205100-00731US2 | 8066 |

21005          7590          08/25/2014
HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 VIRGINIA ROAD
P.O. BOX 9133
CONCORD, MA 01742-9133

| EXAMINER |
|---|
| DAWSON, GLENN K |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/25/2014 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

LEICA BIOSYSTEMS MELBOURNE PARTY LTD.
Requester and Respondent

v.

DAKO DENMARK A/S
Patent Owner and Appellant

————————

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2
Technology Center 3900

————————

Before MARK NAGUMO, RICHARD M. LEBOVITZ, and  JEFFREY B.
ROBERTSON, *Administrative Patent Judges*.[1]

LEBOVITZ, *Administrative Patent Judge*.

DECISION ON APPEAL

This is a decision on the appeal by the Patent Owner from the Patent

Examiner's decision to reject claim 2  in the above-identified *inter partes*

---

[1] Administrative Patent Judge Rae Lynn P. Guest participated in the Oral Hearing
held June 4, 2014, but is unavailable at this time.  Judge Robertson has been added
to the merits panel.  *In re Bose Corp*., 772 F.2d 866, 869 (Fed. Cir. 1985).

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

reexamination of US 7,553,672 B2.  The Board's jurisdiction for this appeal is under 35 U.S.C. §§ 6(b), 134, and 315.  We affirm.


## I. BACKGROUND

The patent in dispute in this appeal is US 7,553,672 B2 ("the '672 patent") which issued June 30, 2009.  The named inventors are Steven A. Bogen, Herbert H. Loeffler, and John A. Purbrick.  The Patent Owner is Dako Denmark A/S.[2] Appeal Br. 1, dated May 31, 2014.

A request for *inter partes* reexamination of the '672 patent under 35 U.S.C. §§ 311-318 and 37 C.F.R. §§ 1.902-1.997 was filed June 29, 2011 ("Request"). The Requester is Leica Biosystems Melbourne Party Ltd.  Resp't Br. 1, dated July 1, 2013.

The '672 patent is the subject of pending litigation in the U.S. District Court for the District of Delaware, C.A. No. 11-390-GMS, *Dako Denmark A/S, et al. v. Leica Microsystem, Inc., et al.*  Appeal Br. 1.  On October 7, 2011, the district court granted a stay of the litigation pending the outcome of this reexamination proceeding.  *Id.*  The '672 patent is a member of a patent family of related patents. *See* '672 patent, "Related U.S. Application Data."

An oral hearing took place on June 4, 2014 with both Patent Owner and Requester in attendance.  A transcript has been entered into the record.


Claims

The '672 patent issued with 7 claims.  Claims 5-7 have been confirmed. Appeal Br. 3.  Claims 1, 3, and 4 have been canceled.  *Id.*  Claim 2 is the only

---

[2] The original patent owner is CytoLogix Corp.  Appeal Br. 20.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

disputed pending claim.  Claim 2, and claim 1 from which it depends, are

reproduced below.  The limitations in dispute have been italicized and numbered

[1] to [3]

> 1.  A method of processing samples mounted on microscope slides
> comprising: providing a plurality of [1] *slide supports* on a platform,
> [2] *each support being comprised of a heating element that underlies*
> *at least one microscope slide* and having a surface on which the at
> least one microscope slide rests so as to transfer heat to the at least
> one microscope slide, said heating elements being capable of heating
> said microscope slides, under independent electronic control to heat
> some slides to a different temperature than other slides; placing two or
> more microscope slides on the platform; providing relative motion
> between the platform and a liquid dispenser; dispensing liquid from
> the liquid dispenser onto the slides; and on the platform, heating one
> slide to a different temperature than a second slide.

> 2. A method of processing samples mounted on microscope slides as
> claimed in claim 1, [3] *wherein each slide support accommodates*
> *only one microscope slide.*

According to the '672 patent, the invention provides an improved

microscope slide staining device that includes:

> In particular, a plurality of flat heating stations are provided on the
> platform, each heating station supporting at least one microscope slide
> and, in a preferred embodiment, each heating surface supporting a
> single microscope slide. The heating stations are individually
> controlled to control temperatures to which the slides are heated.

'672 patent, col.2, ll. 42-48.  The patent explains:

> Since various procedures require heat at different times to enhance the
> rate of chemical reaction, a means has been developed to heat slides to
> different temperatures, independently of the temperatures of other
> slides. This invention allows for heating each slide to its own
> specified temperature.

'672 patent, col.2, ll. 14-19.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Rejections

Patent Owner appeals nine rejections of claim 2.  Appeal Br. 3-4.  Rejections 1-4 and 9 involve Tseung.[3]  Rejections 5-8 involve Bogen '114.[4]  Because we affirm the anticipation and obviousness rejections of claim 2 based on Tseung (Rejections 1 and 2), alone, we do not reach Rejections 3-9.


II. CLAIM INTERPRETATION

The '672 patent expired July 26, 2013, due to non-payment of the maintenance fee due under 37 C.F.R. §1.20(e).  The "Board's review of the claims of an expired patent is similar to that of a district court's review, *Ex Parte Papst-Motoren*, 1 USPQ.2d 1655, 1655-56 (B.P.A.I. Dec. 23, 1986); see also MPEP § 2258 I.G (directing Examiners to construe claims pursuant to *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), during reexamination of an expired patent)." *In re Rambus, Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012).  As explained in *Philips*, "claims 'must be read in view of the specification, of which they are a part.'" [*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996)].  [The] specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' [*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).]. *Philips*, 415 F.3d at 1315.  In addition to the patent specification, the prosecution history of the patent is also pertinent in construing the terms in a claim.  *Id*.  With these principles in hand, we turn to the claim.

---

[3] Tseung, U.S. 5,439,649, issued August 8, 1995.
[4] Bogen, U.S. 5,645,114, issued July 8, 1997.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Claim 1 comprises a plurality of slide supports. Each slide support is "comprised of a heating element that underlies at least one microscope slide and having a surface on which the at least one microscope slide rests." Claim 2 further recites "wherein each slide support accommodates only one microscope slide." Since claim 2 further limits claim 1, it is reasonable to read the slide support of claim 1 as accommodating more than one slide and the support of claim 2 as narrowing the slide support to accommodating only one slide.

There are two disputes concerning the interpretation of claim 2.

First, the meaning of the phrase "each slide support accommodates only one microscope slide" is in dispute. Requester contends that the disputed phrase is a method limitation. Resp't Br. 11. Under this interpretation, Requester argues that the slide support can hold more than one slide, but holds or "accommodates" only one slide when the claimed method is performed. In contrast, Patent Owner contends that "each slide support accommodates only one microscope slide" is a structural limitation that defines the structure of the claimed slide support as providing support for only one slide. Appeal Br. 14. The Examiner appeared to have applied both interpretations, finding that under either interpretation, the claims are anticipated. Right of Appeal Notice ("RAN") 13.

Second, Patent Owner contends that the claimed "heating element that underlies at least one microscope slide" requires the heating element to underlie only one slide such that each single slide support has an individual heating element. Requester contends, and the Examiner holds, this interpretation is improper and imports limitations from the specification. According to both the Examiner and Requester, claim 2 allows the heating element to underlie more than one slide support.

5

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Analysis

    The '672 patent does not expressly define the term "slide support." The only time the term appears in the '672 patent is in the claims. The patent description also does not define the term "accommodates," which is also recited for the first time in the claims.

    The term "slide support" first appeared in claims presented by amendment during examination of Appl. No. 10/864,620 ("the '620 application"), of which the '672 patent is the direct continuation. '672 patent, "Related U.S. Application Data" ("Continuation of application No. 10/864,620, filed on Jun. 9, 2004, now Pat. No. 7,217,392"); '620 application , Amendment dated June 10, 2005. During the prosecution of the '620 application, Patent Owner referred to the slide support as the slide frame of Fig. 2.'620 application, Applicant Remarks, p. 6, dated Feb. 27, 2006.

    Fig. 2 and related Fig. 5 of the '672 patent (same figures and disclosure as in the '620 application) are reproduced below:

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2



FIG. 2                    FIG. 5

Fig. 2 "is a top view of a slide frame providing five sealed cavities [7a

through 7e] above five different slides." '672 patent at col. 3, ll. 16-18.  Fig. 5 "is a

top view of the slide frame housing with five microscope slides in their appropriate

positions, showing the area [striped region] to which heat is applied." *Id.* at col. 3,

ll. 21-23.  "The slide frame base 8 includes a heated area 9 which underlies each of

the slide positions *7a-7e* and incorporates resistive heating elements, not shown."

*Id.* at col. 4, ll. 8-12.

As stated by Patent Owner during the prosecution of the parent '620

application, the slide frame 8 in Fig. 2 is a "slide support" that holds five slides.

'620 application, Applicant Remarks, p. 6, dated Feb. 27, 2006.  This embodiment

is consistent with claim 1 which allows the slide support to accommodate more

than one slide ("having a surface on which the <u>at least one</u> microscope slide rests"

(emphasis added)).

7

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

The question is whether claim 2 has narrowed claim 1 by requiring the slide
support to hold only one microscope slide.  In describing the subject matter of
instant claim 2, Patent Owner stated that the claimed invention involves processing
samples on microscope slides which are supported on "slide supports" on a
platform.  Appeal Br. 2.  Patent Owner explained that "each support 8 [is]
comprised of a heating element 78 that underlies at least one slide (preferably, just
one slide (Fig. 17)) and having a surface 9 on which the slide rests so as to transfer
heat to the slide."  Appeal Br. 2.  Fig. 17 is reproduced below:



FIG. 17

Fig. 17 (reproduced above) shows an embodiment with "forty-nine slide
positions" (only 8 positions depicted in drawing). '672 patent at col. 10, ll. 15-27.
Each slide in this configuration is held in place by slide chamber clips 76 (not
shown) with lateral walls which are said to form a "cavity."  *Id.* at col. 8, ll. 10-20;
see also Fig. 14A and 14B.  The slides are mounted on a slide rotor 77.  See Fig.
14A.  A single heating element 78 is said to provide "a location 88 for a single
slide to be heated."  *Id.* at col. 10, ll. 18-20.  Patent Owner referred to "slide
support 8" in the Appeal Brief on page 2, but there is no element labeled

8

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

"support 8" in Figure 17. However, there is "location 88" which appears to the structure referred to by Patent Owner since it contains heating element 78.

Based on this description in the patent specification, Patent Owner construes "slide support" to be location 88 in Figure 17. Reply Br. 3 (dated December 23, 2013). Patent Owner further argues that because location 88 in Figure 17 holds only one slide and one heating element 78, claim 2 should be interpreted to comprise "a heating element that underlies the only one microscope slide and has a surface on which the only one microscope slide rests so as to transfer heat to the at least one microscope slide." Appeal Br. 14 (emphasis added).

This interpretation is not consistent with the language of the claim when read in view of the specification of the '672 patent. *Philips*, 415 F.3d at 1315. The claim does not require the heating element to be restricted to the slide support which accommodates only one slide. This language does not appear in the claim. Patent Owner has not pointed to any persuasive disclosure in the specification that would dictate such a construction. It is true that Figure 17 shows a single location 88 with a single heating element 87, which does not heat any other location on the platform. However, claim 1 recites "a heating element that underlies at least one microscope slide" (emphasis added), indicating that the heating element can underlie more than one slide. Fig. 5 reproduced above shows such an embodiment. Claim 2 does not explicitly further limit the heating element, indicating that its scope is unchanged from claim 1. Patent Owner has not directed our attention to any limitation in claim 1 or claim 2 that implicitly limits the heating element recited in claim 2 to the support for the single slide. Thus, Patent Owner's argument appears to be based on a reading that would import the specific embodiment of Figure 17 into the claims, i.e., since "location 88" holds only a

9

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

single slide and such a single slide support is shown to contain an individual heater 87, then claim 2 must require that.  Reply Br. 3.  However, it is improper to import limitations from the specification into the claims.  "For example, a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment."  *Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

Patent Owner also argues that slide supports according to claim 2 "(1) accommodate at least one microscope slide; (2) include a heating element that underlies the at least one microscope slide; and (3) have a surface on which the at least one microscope slide rests so as to transfer heat to the at least one microscope slide."  Reply Br. 4.  Based on these requirements, Patent Owner argues that claim 2 "narrows the structural limitations to an embodiment wherein the slide support accommodates only one microscope slide.  Thus, where the slide support accommodates only one microscope slide, the surface of the slide support accommodates only one slide and the heating element that is part of the slide support heats only one microscope slide."  *Id.*  The claim does not recite this.  By the plain language of the claim, the heating element can underlie more than one slide support and still meet the claim limitation.

The interpretation of the slide support advanced by Patent Owner is, in fact, expressly embodied by claim 3 of the parent '392 patent.  Claim 1 of the '392 patent is drawn to a microscope slide staining apparatus, and recites:

> a plurality of slide supports, each support being comprised of a heating element that underlies at least one microscope slide and having a surface on which the at least one microscope slide rests so as to transfer heat to the at least one microscope slide.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Claim 3, which depends from claim 1, recites: "wherein each of the heating elements hears [bears] only one microscope slide." These words (or equivalent words), however, do not appear in appealed claim 2 and we shall not read them into the claim.

Requester contends that the recited limitation of claim 2 "properly must be construed to be a method limitation" because "the '692 [sic, '672] patent does not disclose any slide support that is structurally capable of 'accomodat[ing] only one microscope slide.' All of the slide supports disclosed in the '692 [sic, '672]patent – each slide frame 6 in the first embodiment (see Figure 2) and each slide rotor of the second embodiment (see Figure 17) – are constructed such that they are able to 'accommodate' multiple slides . . . " Request, Appendix B1, p. 7 (brackets in original).

We do not agree. Position 88 of Fig. 17 is a slide support for only a single slide. See *supra*.at p. 7-8.

### III. ANTICIPATION

Claim 2 stands rejected under 35 U.S.C. § 102(b) (pre-AIA) [5] as anticipated by Tseung. RAN 34.

An applicant may not receive a patent for an invention that was "(b) . . . was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA). For a prior art reference to anticipate a claim, it must disclose all of the limitations of the

---

[5] The claims are not subject to the first inventor to file provisions of the American Invents Act ("AIA").

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

claim, "arranged or combined in the same way as in the claim." *Net MoneyIN, Inc.*

*v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008).

In the Request for Reexamination, the Third Party Requester identified in
Appendix B.1 where all the limitations of claims 1 and 2 can be found in Tseung.
Request, Appendix B.1.  Claim 2 recites that "each slide support accommodates
only one microscope slide."  For this feature, Requester identified Tseung's
teaching of "raised areas 202 of a heater block 200 [which] contacts and supports
the bottom of only one microscope slide."  Request, Appendix B1, p. 7, citing
Tseung, col. 12, ll., 12-24 and 49-56; Figs. 9B and 11B.

The method of claim 2 requires: (1) a slide support that comprises a heating
element that underlies at least one microscope slide; (2) having a surface on which
the at least one microscope slide rests so as to transfer heat; (3) heating one slide to
a different temperature than a second slide; and (4) each slide support
accommodates only one microscope slide.

All the claimed features are described by Tseung.

First, we address limitations (1), (2), and (4) of claims 2.

12

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Figure 2 of Tseung is reproduced below (as annotated herein):



FIG. 2

Tseung's Figure 2 shows an apparatus for automated staining of tissues and cells on microscope slides. Figure 2 is a front view showing heating block 200 and raised areas 202 (not numbered in the figure; number added by annotation; *cf.* Fig. 9B, reproduced *infra*). Tseung at col. 12, ll. 46-58. The "raised areas 202 press upward into the open bottoms of the wells of the tray and closely contact the individual microscope slides while also acting to precisely locate tray 190 relative to the location of heating block 200." *Id*. at col. 12, ll. 54-56.

13

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Figure 9B, reproduced below, shows the heating block 200 and raised areas 202.



FIG. 9B

Fig. 9B shows heating block 200, with raised areas 202 which contact the slide, and depressions 204 which fit the slide carrier. Tseung at col. 12, ll. 51-52.

The raised area 202 meets the limitations of the claimed slide support because it has (1) a heating element (block 200) which underlies it; and (2) a surface on which the slide rests to transfer heat (raised area 202). Each raised area (4) accommodates only one slide as required by claim 2. The raised area is similar to location 88 in Figure 17 of the '672 patent which Patent Owner argued serves as the claimed slide support accommodating only one slide.

With regard to element (3) (heating one slide to a different temperature than a second slide), the following disclosures from Tseng are pertinent:

Tseng teaches that "[e]ach of the individual heater blocks 200 shown in FIG. 9 can be assembled into an array of multiple blocks." Tseng, col. 12, ll. 59-61. Figure 10 of Tseng, reproduced below, shows an array of heater blocks.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2



FIG. 10

Figure 10 show the heater blocks arranged in an array.  Tsuen teaches: "It is then possible to individually heat each of the heater blocks to different temperatures, thereby concurrently providing different temperatures of operation for different reagent configurations without operator intervention."  Tseung, col. 12, ll. 62-66.

Based on these disclosures, the preponderance of the evidence supports the Examiner's determination that Tseung describes (3) heating one slide to a different temperature than a second slide.  Specifically, the disclosure at column 12 of Tseung refers to heating the blocks to different temperatures.  When two blocks are each loaded with at least one slide, each slide is heated to a different temperature as required by claim 2.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Patent Owner argues that "Tseung does not disclose a method for processing microscope slides that includes heating each slide individually as claimed in Claim 2." Appeal Br. 13. As already discussed, Patent Owner's interpretation of the claim is not proper. There is no requirement that each slide support have its own individual heater. This language simply does not appear in the claim.

Patent Owner attempts to distinguish Tseung, stating "[e]ach heating element [in Tseung] does not underlie only one microscope slide and each slide support does not have a surface on which the only one microscope slide rests so as to transfer heat to the only one microscope slide as required by Claim 2 of the '672 Patent." Appeal Br. 13. To the contrary, area 202 is expressly taught by Tseung to "press upward into the open bottoms of the wells of the tray and closely contact the individual microscope slides." Tseung at col. 12, ll. 54-56.

Patent Owner argues that configuration described by Tseung with different heating blocks being heated to different temperatures is no different from the prior art four block thermal recycler disclosed in the specification at column 2, lines 20-26. Appeal Br. 15. Patent Owner does not explain how the disclosure of the four block thermal recycle was clearly disavowed in the specification or during prosecution of the claim. *See SkinMedica, Inc. v. Histogen, Inc.*, 727 F.3d 1187, 1211 (Fed. Cir. 2013); *Aventis Pharmaceuticals Inc. v. Amino Chemicals Ltd.*, 715 F.3d. 1363, 1371-72 (Fed. Cir. 2013). This argument is therefore ineffective in distinguishing claim 2 from Tseung.

In sum, a preponderance of the evidence supports the Examiner's determination that claim 2 is anticipated by Tseung.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

## IV. OBVIOUSNESS

Claim 2 stands rejected under 35 U.S.C. § 103 as obvious in view of Tseung.

In the event claim 2 is determined to require that each slide support have its own individual heating element, the Examiner held that it would have been an obvious modification to reduce the number of supports on the heating block of Tseung since the modified apparatus would be simpler in design, require fewer parts, be less expensive, and work in the same manner. RAN 36. The Examiner explained: "Depending on how many samples a user has or needs to examine will determine how many supports [raised area 202] the apparatus contain. An apparatus having slide supports which can only accommodate a single slide would have been an obvious design choice, would have worked in the exact same manner as one accommodating more slides." *Id.*

Patent Owner contends that if heating were "to be implemented on an automated slide stainer, such as the system in Tseung, it would have been batch heating, with all slides heated to the same temperature for IHC [immunohistochemistry] staining." Appeal Br. 16. This argument, and the related one concerning the complexity of individual heating, ignores the explicit teaching in Tseung "to individually heat each of the heater blocks to different temperatures, thereby concurrently providing different temperatures of operation for different reagent configurations without operator intervention." Tseung at col. 12, ll. 62-66. Likewise, Patent Owner's arguments that there was no need for individual slide heating in IHC is unpersuasive because Tseung expressly teaches utilizing different temperatures in the same apparatus. Appeal Br. 16-19. Indeed, Tseung's automated staining apparatus is not limited to immuno-staining. Tseung at col. 2, ll. 25-31.

17

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Regarding the arguments about the wiring complexity (Appeal Br. 18), Patent Owner appears to have misunderstood the Examiner's argument. The Examiner is not proposing to increase the number of slide supports, but to reduce the number so that each slide support (heat block) comprises only one slide support – without changing the wiring.

Even if the configuration with fewer slide supports is less optimal, a teaching that a result would be inferior or less desirable is not a teaching away unless the use "would render the result inoperable." *In re ICON Health and Fitness Inc.*, 496 F.3d 1374, 1381 (Fed. Cir. 2007). Patent Owner has not directed our attention to credible evidence that the fewer-slide configuration would have been inoperable.

In addition to this, even were the disputed limitation that "each slide support accommodates only one microscope slide" is construed to be a method limitation, it would have been obvious to one of ordinary skill in the art to load the tray with a single slide when only one slide was to be processed by the user.

Copying

As evidence of nonobviousness, Patent Owner also contends that the claimed invention was copied. Appeal Br. 20. A declaration by Steven A. Bogen, a co-inventor of the '672 patent, was provided by Patent Owner as evidence. Declaration of Steven A. Bogen, M.D., Ph.D., dated November 15, 2011 ("Bogen Decl."). According to Patent Owner, a competitor, Ventana, gained access to a confidential business plan (Ex. D of Bogen Decl.) from CytoLogix, the original owner of the '672 patent, and used that plan to develop their own device. *Id.* The

18

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

evidence of copying is derived from a talk given by Jack Schuler, Chairman of

Ventana. Ex. C of Bogen Decl.on. In this speech, Mr. Schuler stated:

> So, a healthy company is one that is paranoid about competition. Let me
> give you an example of how this worked for us at Ventana. Two years ago,
> Ventana's only business was in the field of immuno histo chemistry. We
> have looked at a related field of special stains but determined that the pricing
> was too low. A small startup company in Boston called Cytologix had
> developed an instrument for special stains. They need additional funding to
> complete development and circulated financing memorandum that happened
> to cross my desk – this is when we first heard of this start-up. The document
> outlined why Ventana had underestimated this market, that customers were
> ready to pay a higher price for automation. One they got a foothold in this
> special stains market the document boasted that they would "back door"
> Ventana in its base business, Immuno Histo Chemistry, because their
> instrument could do both. Essentially they crowed that they were going to
> eat Ventana's lunch.

Patent Owner alleges that the business plan "described the invention

disclosed and claimed in the '672 Patent," but Patent Owner only generally pointed

to pages 26-28 and 30-31 of the business plan (Ex. D) and did not identify where

the limitations of the claim could be found (Appeal Br. 20-21), a necessary

exercise to show that the claimed subject matter had in fact been copied by

Ventana. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325

(Fed. Cir. 2004).Despite Patent Owner's failure to show where the copied claim

limitations are found in the business plan, we note that page 26 of the plan states:

> The company has identified an approach in which the slide holders
> could be made into single units and the heating elements made part of
> the instrument (instead of the current design which holds five slides
> and consists of a bottom piece which incorporates the heating
> element).

19

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> This new design would create significant advantages, including: . . .
> 3) the heating can now be controlled for each slide, instead of groups
> of five slides.

Dr. Bogen further stated "Ventana copied important aspects of our technology and developed a new automated slide stainer that included independent and individual heating." Bogen Decl. ¶ 18.

Patent Owner contends further evidence of copying comprises 1) licensing by Ventana of two related patents upon which Ventana had been sued for infringement, and of the '672 patent as part of a settlement after the infringement suit was remanded; 2) and filing a patent application directed to a device said to incorporate individual heating to samples. Bogen Decl. ¶ 18; Appeal Br. 20-21.

"Copying requires duplication of features of the patentee's work based on access to that work." *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337, 1348 (Fed. Cir. 2013). Neither the Examiner nor the Requester provided sufficient evidence to rebut Patent Owner's contention that Ventana had access to CytoLogix's business plan and had copied it. The talk by Mr. Schuler in which he describes getting access to CytoLogix's business plan, and copying the device described in it, is adequate evidence of copying. However, statements by Dr. Bogen that Ventana developed a stainer with independent and individual heating is not sufficiently supported by evidence. Patent Owner did not provide evidence that the device developed by Ventana contained individual heaters for each slide support. Mr. Schuler in his talk did not say so. Patent Owner did not introduce evidence that the Ventana device referred to by Mr. Schuler in his talk contained such structures. No Ventana device has been identified in the Appeal Brief before us.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

In order for evidence of secondary considerations to be persuasive, the
Patent Owner has the burden to show a "nexus" or link between what is claimed,
and in this case, the alleged copy.  *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed.
Cir. 1995).  Logically, for a secondary consideration to be persuasive evidence of
nonobviousness, it must be connected to the features of the claimed invention.
Although it is evident that Ventana had CytoLogix's business plan and knowledge
of CytoLogix's concept of individually controlling heat to a microscope slide,
Patent Owner did not show that this element was copied by Ventana and
incorporated into their device.  The evidence of a nexus between copying and the
subject matter of claim 2 has therefore been not established by a preponderance of
the evidence.

Patent Owner alleges that the Ventana filed a patent application directed to
device incorporating individual heating to the sample, and identified US Patent
6,296,809 ("the '809 patent," filed Feb. 26, 1999) as having been issued from this
application.  Appeal Br. 21.  The '809 patent discloses that "[a]nother disadvantage
of the heating units typically employed with automated tissue stainers is that they
do not permit the temperature of individual slides to be separately controlled."
'809 patent, col. 2, ll. 47-50.  The '809 specifically discloses:

> Individualized slide temperature control is accomplished by the
> heating system according to the present invention that has thermal
> platforms radially mounted to the carousel for heating the slides and
> sensing the temperature of each.

'809 patent at col. 3, ll. 57-60.

Requester did not adequately rebut the Patent Owner's contention that the
'809 patent provides evidence of copying.  Neither did the Examiner.

21

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Nonetheless, the evidence that Ventana copied Patent Owner's concept of heating individual slides by incorporating into their patent application is not dispositive because "copying" is only one factor in an obviousness determination. Tseung, which is prior art to the '809 patent, expressly teaches heating two slides individually at different temperatures, and thus addressed the need for heating slides at different temperatures – the same need identified by the '672 patent. '672 patent at col. 2, ll. 8-19. The '672 patent describes individual heaters for each slide support, but describes the advance more narrowly, disclosing specific structure for reducing the wiring complexity (*id.* at col. 2, ll. 20-38; col. 11, ll. 21-22), a feature which is not recited in claim 2.

Claim 2 only require two slides – not the 49 described in the preferred embodiment of the '672 patent, which is said to increase the wiring difficulty and cost of manufacture and servicing. Modifying Tseung by decreasing the size of the heating block to contain a single microscope slide doesn't involve reengineering Tseung's wiring, but simply reduces the number of slides that can be processed by the automated stainer.

In sum, we do not find the evidence of copying persuasive because the concept of heating slides at two different temperatures in an automated slide stainer had already been disclosed by Tseung, and it would have been routine to reduce the support to comprise only a single slide, when a cheaper device was desired. A preponderance of the evidence supports the Examiner's determination that claim 2 would have been obvious to one of ordinary skill in the art in view of Tseung.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

## TIME PERIOD FOR RESPONSE

In accordance with 37 C.F.R. § 41.79(a)(1), the "[p]arties to the appeal may file a request for rehearing of the decision within one month of the date of: . . . [t]he original decision of the Board under § 41.77(a)." A request for rehearing must be in compliance with 37 C.F.R. § 41.79(b). Comments in opposition to the request and additional requests for rehearing must be in accordance with 37 C.F.R. § 41.79(c) & (d), respectively. Under 37 C.F.R. § 41.79(e), the times for requesting rehearing under paragraph (a) of this section, for requesting further rehearing under paragraph (d) of this section, and for submitting comments under paragraph (c) of this section may not be extended.

An appeal to the United States Court of Appeals for the Federal Circuit under 35 U.S.C. §§ 141-144 and 315 and 37 C.F.R. § 1.983 for an *inter partes* reexamination proceeding "commenced" on or after November 2, 2002 may not be taken "until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and appealable by any party to the appeal to the Board." 37 C.F.R. § 41.81. *See also* MPEP § 2682 (8th ed., Rev. 7, July 2008).

In the event neither party files a request for rehearing within the time provided in 37 C.F.R. § 41.79, and this decision becomes final and appealable under 37 C.F.R. § 41.81, a party seeking judicial review must timely serve notice on the Director of the United States Patent and Trademark Office. See 37 C.F.R. §§ 90.1 and 1.983.

## AFFIRMED

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

CC:

Patent Owner:

HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530Virginia Road
PO Box 9133
Concord , MA  01742-9133

Third Party Requester:

Andreas Danckers
LEICA BIOSYSTEMS RICHMOND, INC.
PO Box 528
Richard, IL  60071

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re *Inter Partes* Reexamination of: | ) |
| | ) |
| U.S. Patent No. 7,553,672 B2 | ) |
| | ) |
| Issued: June 30, 2009 | )  Confirmation Nos.: 8066 |
| | ) |
| Inventors:    Steven A. Bogen | )  Group Art Unit:  3993 |
|                     Herbert H. Loeffler | ) |
|                     John A. Purbrick | )  Examiner:  DAWSON, Glenn K. |
| | ) |
| Control No.: 95/001,671 | ) |
| | ) |
| Filed: May 14, 2007 | ) |
| | ) |
| Title: Random Access Slide Stainer With | ) |
|         Independent Slide Heating Regulation | ) |
| | ) |

Director of the United States Patent and Trademark Office
Office of the General Counsel
10B20
Madison Building East
600 Dulany Street
Alexandria, Virginia 22314

**Mail Stop 8**
Attn:  Office of the Solicitor
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA  22319-1450

## CERTIFICATE OF SERVICE

It is certified that a copy of the foregoing Notice of Appeal to The U.S. Court of Appeals

for the Federal Circuit and a copy of the Patent Trial and Appeal Board decisions being appealed

(Appeal 2014-002692) has been transmitted this 19th day of August, 2015, to the Director of the

USPTO via Express Mail, to the PTAB via EFS, to the CAFC via EFS, and served via First

Class Mail to the following:

| | |
|---|---|
| HAMILTON, BROOK, SMITH & REYNOLDS, P.C. 530 Virginia Road P.O. Box 9133 Concord, MA  01742-9133 | K. Shannon Mrksich DANAHER LEGAL 1500 Mittel Blvd. Wood Dale, IL   60191 |
| Andreas Danckers LEICA BIOSYSTEMS RICHMOND, INC. P.O. Box 528 Richard, IL   60071 | |

Dated:  August 19, 2015

Respectfully submitted,
CARTER LEDYARD & MILBURN LLP

Attorneys for Patent Owner

By:   /John M. Griem, Jr./
John M. Griem, Jr.
Two Wall Street
New York, New York  10005
Tel: (212) 732-3200
Fax: (212) 732-3232

7668439.1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,671 | 06/29/2011 | 7,553,672 | 1205100-00731US2 | 8066 |

21005        7590        07/01/2015
HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 VIRGINIA ROAD
P.O. BOX 9133
CONCORD, MA 01742-9133

| EXAMINER |
|---|
| DAWSON, GLENN K |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/01/2015 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

LEICA BIOSYSTEMS MELBOURNE PARTY LTD.
Requester and Respondent

v.

DAKO DENMARK A/S
Patent Owner and Appellant

———————

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2
Technology Center 3900

———————

Before MARK NAGUMO, RICHARD M. LEBOVITZ, and JEFFREY B.
ROBERTSON, *Administrative Patent Judges*.

LEBOVITZ, *Administrative Patent Judge*.

DECISION ON REHEARING

Patent Owner, who is the Appellant in this appeal, requests rehearing under 37 C.F.R. § 41.79 ("Req. Reh'g") of the Decision on Appeal dated August 25, 2014 (the "Decision" or "Dec. Appeal").  Requester and Respondent filed Comments on the Request on October 24, 2014.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

Patent Owner contends new grounds of rejection were not designated as such and that the Decision erred with respect to rejections of claim 2 over Tseung.

1. Was a new ground of rejection set forth in the Decision on Appeal?

Patent Owner contends that the Board upheld the Examiner's obviousness rejection of Tseung on grounds that had not been advanced by the Examiner. Req. Reh'g 1.

A. One of the issues in the appeal is the obviousness of making a slide staining apparatus with heating blocks which hold only a single slide, where each block can be heated to a different temperature. In their Appeal Brief, Patent Owner had argued:

> [M]odifying a stainer with four heating blocks each holding ten slides to forty individual slide heaters is far more than an arbitrary design choice and would result in substantial increases in cost and complexity. For example, such a modification could require a ten-fold increase in the number of heating elements, supply wires, temperature sensing wires, power switching circuits, etc. Increasing the number of these elements by an order of magnitude also has an effect on reliability since there would be more parts subject to failure.

Patent Owner Appeal Br. 8.

The Board responded to this argument, which the Decision characterized as the "complexity argument," by stating that the "Examiner is not proposing to increase the number of slide supports, but to reduce the number so that each slide support (heat block) comprises only one slide support – without changing the wiring." Dec. Appeal 18. The Examiner in the Right of Appeal Notice ("RAN") had stated:

> Furthermore, even if Tseung failed to teach this limitation, the examiner contends that it would have been obvious to have provided

2

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> slide supports which could only support and individually heat one and
> only one slide, because the number of slides supportable by anyone
> slide support would be completely arbitrary.  One could produce a
> slide support which could hold, support and individually heat 50
> slides, or two supports which could each hold, support and
> individually heat 25 slides, or 5 supports which could each hold,
> support and individually heat 10 slides each, or ... 50 slide supports
> which could each hold, support and individually heat only a single
> slide. <u>If someone only needed to routinely process 4 slides, for
> example, an apparatus having four different slide supports, each
> holding, supporting and individually heating only a single slide would
> suffice.</u> There is nothing inventive about altering or adjusting the
> number of slides any particular slide support could hold, support and
> individually heat.

RAN 15 (emphasis added).

Patent Owner contends that "the numerical reference to '4 slides' in the next sentence (referring to a 'need[] to routinely process 4 slides') does not suggest an association with the block of Tseung."  Request 3.

We do not agree with Patent Owner's statement.  In the same paragraph, and in the immediately preceding sentence, the Examiner had specifically discussed Tseung:  "Furthermore, even if Tseung failed to teach this limitation, the examiner contends that it would have been obvious to have provided slide supports which could only support and individually heat one and only one slide, because the number of slides supportable by anyone slide support would be completely arbitrary."  RAN 15.  Indeed, the entire paragraph is a response to Patent Owner's argument that there is no motivation to provide Tseung with individual slide heating.  *Id.* at 14.  Consequently, the evidence of record does not support Patent Owner's contention that a new grounds of rejection had been set forth in the Decision on Appeal.

3

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

B. Patent Owner also contends the Board's discussion of "copying" set forth a new ground of rejection. Req. Reh'g 4. Specifically, Patent Owner argues that the "Examiner found no evidence of copying. The Board reversed this determination, finding copying." *Id.*

Although our final conclusion was that copying of the features of the claimed invention had not been established by Patent Owner, several statements in the section titled "Copying" in the Decision on Appeal were imprecisely worded. As a consequence, we delete the entire copying section on pages 18-22 and replace it with the following section. (Underlining shows the material added to the discussion; the deleted text is shown as a cross-out.)

Copying

As evidence of nonobviousness, Patent Owner also contends that the claimed invention was copied. Appeal Br. 20. A declaration by Steven A. Bogen, a co-inventor of the '672 patent, was provided by Patent Owner as evidence. Declaration of Steven A. Bogen, M.D., Ph.D., dated November 15, 2011 ("Bogen Decl."). According to Patent Owner, a competitor, Ventana, gained access to a confidential business plan (Ex. D of Bogen Decl.) from CytoLogix, the original owner of the '672 patent, and used that plan to develop their own device. *Id.* The evidence of copying is derived from a talk given by Jack Schuler, Chairman of Ventana. Ex. C of Bogen Decl. In this speech, Mr. Schuler stated:

> So, a healthy company is one that is paranoid about competition. Let me give you an example of how this worked for us at Ventana. Two years ago, Ventana's only business was in the field of immuno histo chemistry. We have looked at a related field of special stains but determined that the pricing was too low. A small startup company in Boston called Cytologix had developed an instrument for special stains. They need additional funding to complete development and circulated financing memorandum that happened to cross my desk – this is when we first heard of this start-up. The document outlined why Ventana had underestimated this market, that customers were ready to pay a higher price for automation. One they got a foothold in this special stains market the document boasted that they would "back door"

4

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> Ventana in its base business, Immuno Histo Chemistry, because their
> instrument could do both. Essentially they crowed that they were going to
> eat Ventana's lunch.
>
> Well, what a wonderful opportunity they gave us to motivate our
> organization. Sometimes help comes from the most unusual source.
> Talk about a random event! We received the information in
> November 97. Cytologix claimed they would be on the market in six
> months. We gathered our engineers and asked them what was their
> reaction to Cytologix' boasting. Did they want to take the challenge?
> We confirmed their market research and finalized our design 2 months
> later. Fortunately, it only required a modification to one of our
> existing instruments. Six months later we launched the instrument
> and the rest is history.

*Id*.

Patent Owner alleges that the business plan "described the invention
disclosed and claimed in the '672 Patent," but Patent Owner only generally pointed
to pages 26-28 and 30-31 of the business plan (Ex. D) and did not identify where
the limitations of the claim could be found (Appeal Br. 20-21), a necessary
exercise to show that the claimed subject matter had in fact been copied by
Ventana. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325
(Fed. Cir. 2004). Despite Patent Owner's failure to show where the copied claim
limitations are found in the business plan, we note that page 26 of the plan states:

> The company has identified an approach in which the slide holders
> could be made into single units and the heating elements made part of
> the instrument (instead of the current design which holds five slides
> and consists of a bottom piece which incorporates the heating
> element).
> This new design would create significant advantages, including: . . .
> 3) the heating can now be controlled for each slide, instead of groups
> of five slides.

Dr. Bogen further stated "Ventana copied important aspects of our
technology and developed a new automated slide stainer that included independent
and individual heating." Bogen Decl. ¶ 18.

Patent Owner contends further evidence of copying comprises 1) licensing
by Ventana of two related patents upon which Ventana had been sued for
infringement, and of the '672 patent as part of a settlement after the infringement

5

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

suit was remanded; 2) and filing a patent application directed to a device said to incorporate individual heating to samples. Bogen Decl. ¶ 18; Appeal Br. 20-21.

"Copying requires duplication of features of the patentee's work based on access to that work." *Institut Pasteur & Universite Pierre et Marie Curie v. Focarino*, 738 F.3d 1337, 1348 (Fed. Cir. 2013). Neither the Examiner nor the Requester provided sufficient evidence to rebut Patent Owner's contention that Ventana had access to CytoLogix's business plan ~~and had copied it~~ and described using it to design a new instrument. ~~The talk by Mr. Schuler in which he describes getting access to CytoLogix's business plan, and copying the device described in it, is adequate evidence of copying.~~ However, statements by Dr. Bogen that Ventana developed a stainer with independent and individual heating is not sufficiently supported by evidence. Patent Owner did not provide evidence that the device developed by Ventana contained individual heaters for each slide support. Mr. Schuler in his talk did not say so. Patent Owner did not introduce evidence that the Ventana device referred to by Mr. Schuler in his talk contained such structures. No evidence of the Ventana device has been identified in the Appeal Brief before us.

In order for evidence of secondary considerations to be persuasive, the Patent Owner has the burden to show a "nexus" or link between what is claimed, and in this case, the alleged copy. *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). Logically, for a secondary consideration to be persuasive evidence of nonobviousness, it must be connected to the features of the claimed invention. Although it is evident that Ventana had access to CytoLogix's business plan, ~~CytoLogix's business plan and knowledge of CytoLogix's concept of individually controlling heat to a microscope slide,~~ Patent Owner did not show that CytoLogix's concept of individually controlling heat to a microscope slide was copied by Ventana and incorporated into their device ~~this element was copied by Ventana and incorporated into their device~~. The evidence of a nexus between copying and the subject matter of claim 2 has therefore been not established by a preponderance of the evidence.

Patent Owner alleges that the Ventana inventors filed a patent application directed to device incorporating individual heating to the sample, which application was said to mature into ~~and identified~~ US Patent 6,296,809 ("the '809 patent," filed Feb. 26, 1999) ~~as having been issued from this application~~. Appeal Br. 21. The '809 patent discloses that "[a]nother disadvantage of the heating units typically employed with automated tissue stainers is that they do not permit the

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

temperature of individual slides to be separately controlled." '809 patent, col. 2, ll. 47-50.  The '809 specifically discloses:

> Individualized slide temperature control is accomplished by the heating system according to the present invention that has thermal platforms radially mounted to the carousel for heating the slides and sensing the temperature of each.

'809 patent at col. 3, ll. 57-60.

Neither the Requester nor the Examiner provided adequate rebuttal arguments to ~~Requester did not adequately rebut the~~ Patent Owner's contention that the '809 patent provides evidence of copying.  ~~Neither did the Examiner.~~

Nonetheless, even if Ventana had ~~the evidence that Ventana~~ copied Patent Owner's concept of heating individual slides by incorporating into their patent application, this is not dispositive because "copying" is only one factor in an obviousness determination.  Tseung, which is prior art to the '809 patent, expressly teaches heating two slides individually at different temperatures, and thus addressed the need for heating slides at different temperatures – the same need identified by the '672 patent.  '672 patent at col. 2, ll. 8-19.  The '672 patent describes individual heaters for each slide support, but describes the advance more narrowly, disclosing specific structure for reducing the wiring complexity (*id.* at col. 2, ll. 20-38; col. 11, ll. 21-22), a feature which is not recited in claim 2.

Claim 2 only require two slides – not the 49 described in the preferred embodiment of the '672 patent, which is said to increase the wiring difficulty and cost of manufacture and servicing.  Modifying Tseung by decreasing the size of the heating block to contain a single microscope slide doesn't involve reengineering Tseung's wiring, but simply reduces the number of slides that can be processed by the automated stainer.

In sum, we do not find the evidence of copying persuasive because the concept of heating slides at two different temperatures in an automated slide stainer had already been disclosed by Tseung, and it would have been routine to reduce the support to comprise only a single slide, when a cheaper device was desired.  A preponderance of the evidence supports the Examiner's determination that claim 2 would have been obvious to one of ordinary skill in the art in view of Tseung.

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

2.  Does heating element of claim 2 underlie only one slide?

Patent Owner contends that the Board misapprehended or overlooked claim interpretation arguments and arrived at an incorrect interpretation of claim 2, specifically in concluding that the "the heating element can underlie more than one slide support and still meet the claim limitation" (Dec. App. 9) of Claim 2.  Req. Reh'g 5.  Rather, Patent Owner argues that claim 2 requires the heating element to underlie only one slide.

Patent Owner contends the Board erred in making the statement in the Decision on Appeal that "Patent Owner has not directed our attention to any limitation in claim 1 or claim 2 that implicitly limits the heating element recited in claim 2 to the support for the single slide."  Dec. Appeal 9.  Patent Owner argues the Board overlooked Patent Owner's arguments in which such claim language was identified.  Request 5-6.

The Decision specifically addressed Patent Owner's arguments concerning the specific limitation in claim 2 "wherein each slide support accommodates only one microscope slide."  Dec. App. 10.  To the extent the quoted statement above conflicts with the Board's analysis on pages 10-11 of the Decision on Appeal, we strike it from the decision.

In sum, Patent Owner's arguments do not persuade us that we misapprehended or overlooked claim interpretation arguments and arrived at an incorrect interpretation of claim 2.

3.  Does Tseung anticipate claim 2?

Patent Owner contends that the Board misapprehended or overlooked claim construction principles and the teachings of Tseung in concluding that Tseung

8

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

anticipates Claim 2. Req. Reh'g 6. Specifically, Patent Owner argues that Tsueng's slide support does not accommodate only one slide as required by the claim and that the raised area 202 is not a slide support that accommodates only one slide as required by the slide because it is still part of a single heating element. *Id*.

Claim 2 was interpreted to require the recited "slide support to hold only one microscope slide, but to permit a heating element that heats more than one support. Dec. App. 9. The '672 patent did not define "slide support." Based on description in the '672 patent, we interpreted "slide support" to mean a support that has a location for only single slide. *Id*. at 8. As explained in the Decision, area 202 of Tsueng's apparatus has a raised surface 202 that serves as a location for only one slide, meeting the limitation in the claim. *Id*. at 14. Patent Owner did not persuasively identify a defect in this analysis. Consequently, we are not persuaded that we misapprehended or overlooked claim construction principles and the teachings of Tsueng in concluding that Tsueng anticipates Claim 2.

4. Does Tsueng render claim 2 obvious?

Patent Owner contends that the Board misapprehended or overlooked Patent Owner's argument that "there was no motivation to move away from the batch heating of Tsueng, e.g., heating batches of 10 slides at a time on a single block, to individual heating." Req. Reh'g 6.

Patent Owner argues:

Tsueng does not teach individual slide heating or the problems associated with automating special stains. At most, Tsueng teaches that batches of slides can be heated to a different temperature than other batches of slides. This is not the invention described in Claim 2

9

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

> and does not provide any motivation to arrive at the invention of
> Claim 2.

*Id*. at 7.

We agreed with the Examiner's determination that "that it would have been an obvious modification to reduce the number of supports on the heating block of Tseung since the modified apparatus would be simpler in design, require fewer parts, be less expensive, and work in the same manner." Dec. Appeal 17. While there is no explicit suggestion to produce a slide support for a single slide, it is proper to "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1740 (2007). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *Id*. at 1742.

In agreeing with the Examiner, we did not overlook "complexity argument" as argued by Patent Owner. Req. Reh'g 7. The wiring complexity argument appears to be predicated on a requirement for 40 individual heaters. Appeal Br. 18; Floyd Decl. at p. 10, ¶ 40. However, the Examiner did not propose 40 different heaters, but rather concluded that there is "nothing inventive about altering or adjusting the number of slides any particular slide support could hold, support and individually heat." RAN 15. The Examiner stated:

> Depending on how many samples a user has or needs to examine will
> determine how many supports the apparatus contain. An apparatus
> having slide supports which can only accommodate a single slide
> would have been an obvious design choice, would have worked in the
> exact same manner as one accommodating more slides.

RAN 36. In other words, the number of slide supports necessary would depend on the needs of the user. Thus, not every obvious configuration would require 40

10

Appeal 2014-002692
Reexamination Control 95/001,671
Patent 7,553,672 B2

individual supports and "a ten-fold increase" in wiring, etc, as argued by Patent Owner.  Req. Reh'g 7.

## SUMMARY

The rehearing is **GRANTED-IN-PART**, and the Opinion has been modified, but the disposition of the appealed claims is not changed.


ack

CC:

Patent Owner:

HAMILTON, BROOK, SMITH & REYNOLDS, P.C.
530 Virginia Road
PO Box 9133
Concord , MA  01742-9133

Third Party Requester:

Andreas Danckers
LEICA BIOSYSTEMS RICHMOND, INC.
PO Box 528
Richard, IL  60071

U.S. Patent No. 7,553,672 B2
Reexamination Control No. 95/001,671

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re *Inter Partes* Reexamination of: | |
| U.S. Patent No. 7,553,672 B2 | |
| Issued:  June 30, 2009 | Confirmation No. 8066 |
| Inventors:    Steven A. Bogen | Group Art Unit: 3993 |
|                     Herbert H. Loeffler | |
|                     John A. Purbrick | Examiner:  Dawson, Glenn K. |
| Title:          Random Access Slide Stainer | |
|                   With Independent Slide Heating | |
|                   Regulation | |
| Control No.:  95/001,671 | |
| Filed:  May 14, 2007 | |

### NOTICE BY REQUESTER LEICA OF ITS ELECTION TO PARTICIPATE IN PATENT OWNER'S APPEAL TO THE COURT OF APPEALS FOR THE FEDERAL CIRCUIT AND NOTICE OF CROSS-APPEAL

Director of the United States Patent and Trademark Office
Office of the General Counsel
10B20
Madison Building East
600 Dulaney Street
Alexandria, Virginia 22313-1450

Sir or Madam:

In accordance with 37 C.F.R. § 1.983(e), Requester Leica Biosystems Melbourne Party

Ltd. ("Leica") hereby provides notice of its election to participate in the appeal by Patent Owner

Dako Denmark A/S to the U.S. Court of Appeals for the Federal Circuit, from the Decision of

the Patent Trial and Appeal Board dated August 25, 2014 and from the Decision on Rehearing of

the Patent Trial and Appeal Board dated July 1, 2015 in the above-captioned reexamination.

U.S. Patent No. 7,553,672 B2
Reexamination Control No. 95/001,671

Further, pursuant to 35 U.S.C. §§ 141-44 and 37 C.F.R. §§ 1.983(d), 90.2, 90.3, 104.2, and Federal Rule of Appellate Procedure 4(a)(3), notice is hereby given that Leica cross-appeals (to the extent necessary) to the United States Court of Appeals for the Federal Circuit from: (1) the Patent Trial and Appeal Board's Decision on Appeal dated August 25, 2014; (2) the Patent Trial and Appeal Board's Decision on Rehearing dated July 1, 2015; (3) any preceding or subsidiary decisions or orders that gave rise to the August 25, 2014 Decision on Appeal or the July 1, 2015 Decision on Rehearing; and (4) any and all other appealable rulings, decisions, orders, findings, and/or conclusions entered during the reexamination, or in the appeal therefrom, adversely affecting Leica.[1]

The issue on cross-appeal includes, but is not limited to, whether the Examiner correctly determined that U.S. Patent No. 5,645,114 to Bogen is not prior art based on the evidence presented by Patent Owner and, therefore, whether U.S. Patent No. 5,645,114 invalidates claim 2 of the patent at issue under 35 U.S.C. sections 102 and/or 103 for the reasons stated by Leica and/or the Examiner in the reexamination and/or by Leica in the appeal to the Patent Trial and Appeal Board.

Leica further reserves the right to challenge any finding or determination supporting or relating to the issue listed above and to challenge any other issues decided adversely to Leica in any orders, decisions, rulings, and opinions underlying the August 25, 2014 Decision on Appeal or the July 1, 2015 Decision on Rehearing.

Pursuant to 37 C.F.R. § 90.3 and Federal Rule of Appellate Procedure 4(a)(3), this Notice is timely. In addition to this submission, a copy of this notice is being filed simultaneously with the Patent Trial and Appeal Board and the Clerk's Office for the United States Court of Appeals

---

[1] Patent Owner filed its notice of appeal on August 19, 2015.

U.S. Patent No. 7,553,672 B2
Reexamination Control No. 95/001,671

for the Federal Circuit. Requestor authorizes the U.S. Patent and Trademark Office to charge any

required fees associated with this notice to Deposit Account No. 50-0581 referencing docket

number 13989.046.

Date:  September 1, 2015.                    Respectfully submitted,

PARSONS BEHLE & LATIMER              By_____
Customer Number 67559                      Dana M. Herberholz, Reg. No. 68049
800 W. Main Street, Suite 1300             C. Kevin Speirs, Reg. No 48988
Boise, ID  83702                           Michael R. McCarthy, Reg. No. 52010
Telephone:  (208) 562-4900                 Attorneys for Leica Biosystems Melbourne
Facsimile:  (208) 562-4901                 Party Ltd.

3